[Civ. No. 184. Fourth Appellate District.—November 25, 1930.]

C. H. CRAWFORD et al., Respondents, v. MAJOR G. FOSTER et al., Appellants.

Swing & Wilson and Fred A. Wilson for Appellants.

E. B. Drake for Respondents.

BARNARD, J.—This is an action for damages on account of injuries received by plaintiff Mary W. Crawford on September 28, 1929, while riding in an automobile which was being demonstrated to the plaintiffs by defendant Martens, as the agent of defendant Foster. Foster was in the business of selling Essex automobiles in Ontario, California, and Martens was one of his salesmen. On September 27, 1929, plaintiff C. H. Crawford called at the defendants' place of business and manifested an interest in the purchase of an automobile. He told Martens that he would not buy a car unless his wife was satisfied. There was evidence that the two plaintiffs proposed to buy a car together, with funds of which they were equal owners. By arrangement, Martens called at their home on the following day and took both plaintiffs out for a demonstration, during which he drove the car across a dip in the pavement in such a manner that Mrs. Crawford was thrown from her seat and suffered the injuries complained of. The complaint sets up two causes of action, the first being predicated upon negligence. It is alleged that in the sale of Essex automobiles, it is necessary to demonstrate such automobiles to prospective purchasers; that the plaintiffs were prospective purchasers of the car then being demonstrated to them by the defendant Martens; and that the vehicle was negligently operated during the actual demonstration thereof to the plaintiffs. A second cause of action is based upon gross negligence. The jury returned a verdict in favor of the plaintiffs upon the first cause of action, and in answer to special interrogatories submitted to it, found that the plaintiff Mary W. Crawford was a prospective purchaser of the automobile, and that the defendant Frank M. Martens was not guilty of gross negligence in driving the car in question. In the instructions of the court the jury was told that "it was the

duty of the defendants, if they were demonstrating, by the said Frank M. Martens, the said automobile to the plaintiffs as prospective purchasers thereof, to have used ordinary care, caution and prudence''.

The defendants have appealed from the judgment which followed, the only question raised being whether Mary W. Crawford was a guest within the meaning of section 141¾ of the California Vehicle Act, which became effective August 14, 1929. The pertinent part of this section reads as follows:

''Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the State of California, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. . . .

''Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately resulting from the intoxication, wilful misconduct, or gross negligence of such owner, driver or person responsible for the operation of such vehicle; provided, that in any action for death or for injury or damage to person or property by or on behalf of a guest or the estate, heirs or legal representatives of such guest, the burden shall be upon plaintiff to establish that such intoxication, wilful misconduct or gross negligence was the proximate cause of such death or injury or damage.

''For the purpose of this action the term 'guest' is hereby defined as being a person who accepts a ride in any vehicle without giving compensation therefor.'' (Stats. 1929, p. 1580.)

Appellants argue that the legislature having thus defined the word ''guest'', the definition is binding upon the courts. (Citing *Application of Monrovia Evening Post,* 199 Cal. 263 [248 Pac. 1017].) And, further, that the language used must be strictly applied even though it appeared probable that a different object was in the mind of the legislature. (Citing *City of Eureka* v. *Diaz,* 89 Cal. 467 [26 Pac. 961].) While these rules apply when the language of an act is plain and unambiguous, it is often necessary, in ascertaining the intent of the legislature, not only to examine the

language used, but to look further, if doubt or uncertainty still exists. In this case, while an attempt is made, in the final paragraph of the act, to define the word "guest" as therein used, in deciding whether Mrs. Crawford came within that definition, we must determine what is meant by accepting a ride without giving compensation therefor. The language used leaves a doubt as to what sort of compensation is intended. Appellants argue that to give compensation implies a transfer, a bestowal, or a parting with something. In effect, their view would define a guest as one who accepts a ride without actually handing over some definite payment therefor. To thus assume that the recompense or compensation contemplated by the act is the payment of a cash fare or its equivalent, appears to us to place altogether too narrow a construction upon the words used. Webster's New International Dictionary defines compensation as follows: "that which constitutes, or is regarded as an equivalent or recompense; that which makes good the lack or variation of something else; that which compensates for loss or privation; amends; remuneration, recompense". Automobile dealers and salesmen are not only willing but anxious to exchange their time and the use of a car for the time and attention of a person who is in the market for such a car. There can be no question that in actual business, the one is regarded as an equivalent or recompense for the other. It will be noted that the definition in the statute does not say "without paying therefor", but rather says "without giving compensation therefor". This indicates an intention not to limit the same to a person definitely and specifically paying for his transportation in cash or its equivalent, but to include in its scope a person who gives such recompense for the ride as may be regarded as a compensation therefor, that is, a return which may make it worth the other's while to furnish the ride. The value of advertising is measured by the prospects secured. The giving of an opportunity to make an actual demonstration of the goods, by such a prospect, is equally worth while to a dealer. In *Searcy* v. *Grow*, 15 Cal. 118, the word "compensation" is defined as "that return which is given for something else; in other words, a consideration". A consideration may be any benefit conferred or any prejudice suffered. (Civ. Code, sec. 1605.) The taking of a demon-

stration of an automobile, with its accompanying possibilities of profit, would not only seem to be a benefit to the dealer, but a return fully proportionate to any benefit conferred on the prospect. We think the meaning of the language used is, that a guest is one who is invited, either directly or by implication, to enjoy the hospitality of a driver of a car; who accepts such hospitality; and who takes a ride either for his own pleasure or on his own business, without making any return to or conferring any benefit upon the driver of the car, other than the mere pleasure of his company. And further, that one who is looking at an automobile with a view of purchasing the same, and who accepts a ride therein as a part of the examination thereof, solely to test its fitness for his use, is not accepting a ride as a matter of hospitality, but is rendering value received for his transportation. Such a person is no more a guest of the dealer than is one who examines and tests goods offered for sale in a store, but the one is just as much a customer as the other.

The relationship between the parties here is not entirely dissimilar to that existing between the owner of a store and a customer using an elevator therein. In such a case, the Supreme Court has said:

"Naturally this facility of transportation would increase its patronage and necessarily its profits in business. In fixing the price at which its goods and merchandise must be sold so as to return a profit, necessarily the operating expenses of the establishment, including this elevator service, must be taken into consideration and provided for. The prices charged and paid by customers for goods would include a reimbursement to appellant for its expenses entailed in the operation of the elevator for its patrons, and hence would constitute a sufficient reward for their carriage so as to bring appellant within the category of a carrier of passengers for hire and subject to the same duties and responsibilities." (*Champagne* v. *Hamburger*, 169 Cal. 683 [147 Pac. 954, 958].)

The indirect benefit to the merchant is in that case held to be compensation for a ride in an elevator. A similar benefit appears in the instant case, which we think must be held to be a compensation, given and received, for the

ride in question. While the respondents may not have been passengers for. hire, having given compensation for the ride, they were not guests.

While there are exceptions, notably in the case of persons staying at a hotel, in its ordinary use the word "guest" connotes something other than a business transaction. The taking of a prospective purchaser out to ride in a car for the purpose of demonstrating its good qualities is a usual and ordinary incident in the automobile business. While the question now before us has not heretofore been passed upon in this state, the general situation of an automobile being demonstrated to a prospective purchaser by a dealer is not new. It is significant that in such cases heretofore, the prospective purchaser, when referred to, has usually, if not always, been designated as a passenger, or a buyer, rather than as a guest. We feel that this designation has not been accidental. The words "passenger" or "buyer" as used in such cases, better convey the meaning intended than would the word "guest", because such a demonstration partakes more of the nature of a contractual relationship than of the entertainment of an invited guest, or the conferring of a favor by a host, with no hope of return and no profit in view. It is not undertaken by the dealer as an act of hospitality, or a favor, but as a real and vital part of his business, with an eye to his own profit. It is participated in. by the customer, not as a means of obtaining free transportation, but as an integral part of a business transaction. It may be considered as a distinct benefit to the dealer.

In Massachusetts, although they have no statute similar to the one here in question, the rule has been established that where an invited guest is riding in a machine with the owner thereof, he cannot recover for injuries sustained, unless the owner and driver of the car was guilty of gross negligence. (*Massaletti* v. *Fitzroy*, 228 Mass. 487 [Ann. Cas. 1918B, 1068, L. R. A. 1918C, 264, 118 N. E. 168]; *West* v. *Poor*, 196 Mass. 183 [124 Am. St. Rep. 541, 11 L. R. A. (N. S.) 936, 8 N. E.. 960].) But in applying the rule, the courts of that state have distinguished between cases where one is a mere guest of another and has been permitted to ride gratuitously, and cases where one, in riding, is conferring some benefit upon the driver of the

car. (*Lyttle* v. *Monte,* 248 Mass. 340 [142 N. E. 795];
*Jackson* v. *Queen,* 257 Mass. 515 [154 N. E. 78]; *Labatte*
v. *Lavallee,* 258 Mass. 527 [155 N. E. 433]; *Loftus* v.
*Pelletier,* 223 Mass. 63 [111 N. E. 712].) Not only is such
a distinction a logical one, but that it was intended by the
statute here in question is indicated by the use of such
broad words as ''giving compensation'', instead of words
limiting the meaning to the payment of a fare, or the trans-
fer of a definite consideration.

It has been held that the terms of a statute should be
construed with their intent and purpose in view. (*Evans*
v. *Selma Union High School Dist.,* 193 Cal. 54 [31 A. L. R.
1121, 222 Pac. 801].) The purpose and object that the
legislature had in mind, sometimes throws light upon the
meaning of the language used. The situation that this
section was apparently designed to prevent is well known.
As the use of automobiles became almost universal, the
proverbial ingratitude of the dog that bites the hand that
feeds him, found a counterpart in the many cases that arose,
where generous drivers, having offered rides to guests, later
found themselves defendants in cases that often turned upon
close questions of negligence. Undoubtedly, the legislature,
in adopting this act, reflected a certain natural feeling as to
the injustice of such a situation. Neither this feeling nor
the reasons therefor apply to a situation arising out of an
ordinary business transaction, such as the efforts of a
dealer to sell an automobile to a customer. Doubtless, the
legislature intended to change the rule heretofore adopted
in this state, that a mere invited guest could recover for
simple negligence, and to provide that such a person could
not recover in the absence of a showing of gross negligence.
However, we think the language used in this section has
no application to a case where a dealer is anxious to demon-
strate his goods to a prospective purchaser in the hope of
making a sale; where the expense of making the demonstra-
tion trip is a usual and not inconsiderable part of the over-
head expense of the business; where this expense may be
presumed to be paid out of the returns from the business;
and where a real benefit and advantage accrues to the dealer,
in the opportunity to make a sale and profit thereby. In
such a case, whether a particular trip results in a sale or
not, the prospective customer is giving such compensation

as removes him from the status of a ''guest'', within the meaning of the act we have been considering.

The judgment appealed from is affirmed.

Cary, P. J., and Marks, J., concurred.

'A petition for a rehearing of this cause was denied by the District Court of Appeal on December 20, 1930, and a petition by appellants to have the cause heard in the Supreme Court; after judgment in the District Court of Appeal, was denied by the Supreme Court on January 22, 1931.