F. M. BOOKHART, Appellee, v. GREENLEASE-LIED MOTOR COMPANY, Appellant.

No. 41511.

OCTOBER 19, 1932.

Shull & Stilwill, for appellant.

Marks, Marks & Eik and Fred H. Free, for appellee.

WAGNER, J.—The vital question in this case is as to whether or not the plaintiff, at the time in question, within the meaning of the law, was a passenger or person riding in a motor vehicle as a guest or by invitation and not for hire. It may be conceded that the allegations of plaintiff's petition are sufficient to charge both negligence and recklessness on the part of the driver of the automobile. At the close of plaintiff's evidence, and again at the close of all of the evidence, the defendant moved for a directed verdict, upon the ground that the testimony shows that the plaintiff, at the time of the accident, was in a car operated by defendant's agent, as a guest and upon invitation and not for hire, and that the evidence is wholly insufficient to establish, within the meaning of the law, recklessness, on the part of the driver of the automobile. This motion was by the court overruled and the appellant now urges said ruling as error. The appellant necessarily relies upon what is familiarly called the guest statute, Section 5026-bl, Code, 1931, which reads as follows:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

There is no evidence of intoxication upon the part of the driver of the automobile at the time in question. To fully set out the evidence would unduly extend the length of this opinion. It is sufficient to say that the evidence warrants the finding by the jury

of negligence by the driver of the automobile at the time in question, that the same was the proximate cause of plaintiff's injury, and that the plaintiff was free from contributory negligence. The pleadings put in issue the question as to whether or not the plaintiff at the time in question and within the meaning of the aforesaid statutory law was a passenger or person riding in the automobile as a guest or by invitation and not for hire. This court has made definite pronouncement as to what constitutes "reckless operation" within the purview of the aforesaid quoted statute. See Siesseger v. Puth, 213 Iowa 164;Neessen v. Armstrong, 213 Iowa 378; Kaplan v. Kaplan, 213 Iowa 646. It is sufficient to say that the evidence does not establish "reckless operation" by the driver of the automobile at the time in question. Therefore, if the plaintiff was a "passenger or person riding in said motor vehicle as a guest or by invitation and not for hire," appellant's motion for a directed verdict should have been sustained. The evidence as to this question is uncontradicted. The defendant is a corporation engaged in business in Sioux City in the sale and exchange of automobiles. One Leap was a servant or salesman of the defendant-corporation. On July 14, 1929, Leap called at the residence of the plaintiff and began negotiations with him relative to the exchange of a certain Oldsmobile owned by the defendant-corporation for a car then owned by the plaintiff. The plaintiff testified:

"We looked the car [Oldsmobile] over and he [Leap] asked me if I would consider it. I told him the car looked all right, if it was in as good shape as it appeared. I said if it was as good mechanically as it appeared, I would consider it. He said it was and asked what I would think of making a trade or deal. I told him I would want to trade my car in. We then had a conversation with reference to how much my car would be traded in for, and in fact everything was practically arranged on condition of the car being suitable. He said he would show me it would do my work and do it satisfactorily. He said, 'I will show you what the car will do. If you will get in the car we will take a little drive and see what the car works like.' I got in the car there at the corner in the seat beside the driver. The car was headed east and was standing right by the corner of the curb. We then drove east."

This testimony is substantially admitted by the testimony of Leap. It was during this journey taken for the purpose of demon-

strating the Oldsmobile to the plaintiff that the accident occurred. No deal was finally consummated.

The question for our determination is, under the aforesaid uncontradicted testimony, was the plaintiff, within the meaning of Section 5026-bl, Code, 1931, a "passenger or person riding in said motor vehicle as a guest or by invitation and not for hire?" This is a case of first impression in this state, upon the question presented. Indeed, there is a paucity of adjudicated cases in other jurisdictions relative to similar statutes.

In order to arrive at the proper construction to be placed upon a statute, it is proper to look at the law as it previously stood, the matter sought to be remedied, and the nature and spirit of the statute. See Latta v. Utterback, 202 Iowa 1116; Sinnott v. District Court of Clarke County, 201 Iowa 292; State v. Claiborne, 185 Iowa 170; Crawford v. Foster (Cal.), 293 Pac. 841. As is well stated in the case last cited:

"It has been held that the terms of a statute should be construed with their intent and purpose in view. Evans v. Selma Union High School Dist., 193 Cal. 54, 222 P. 801, 31 A. L. R. 1121. The purpose and object that the legislature had in mind sometimes throws light upon the meaning of the language used. The situation that this section [one similar to Section 5026-bl, Code, 1931,] was apparently designed to prevent is well known. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation. *Neither this feeling nor the reasons therefor apply to a situation arising out of an ordinary business transaction, such as the efforts of a dealer to sell an automobile to a customer.*" (Writer's italics.)

In so far as material, the Connecticut statute provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless said accident shall have been intentional on the part of said owner or operator,

or caused by his heedlessness or his reckless disregard of the rights of others." Pub. Acts. 1927, C. 308.

In Kruy v. Smith (Conn.), 144 Atl. 304, the plaintiff was engaged in general housework, being employed by the day by various people. She had been engaged by the defendant to work for her as a laundress, and in the early morning, the defendant drove an automobile to the plaintiff's home to get her, and the plaintiff entered defendant's car and was injured during the trip. The defendant contended that, under said facts, the plaintiff was a guest within the meaning of the statute hereinbefore quoted. The court held against the defendant's contention, saying:

"The legislature, when it used the word 'guest,' did not intend to include persons who are being transported for the mutual benefit of both the passenger and the operator or owner of the car, and, in determining whether the transportation was for the mutual benefit of both, not merely the act of transportation must be considered, but also any contract or relationship between the parties to which it was an incident."

In so far as material, the California statute upon this subject reads as follows:

"Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the State of California, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. * * * Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately resulting from the intoxication, wilful misconduct, or gross negligence of such owner, driver or person responsible for the operation of such vehicle; provided, that in any action for death or for injury or damage to person or property by or on behalf of a guest or the estate, heirs or legal representatives of such a guest, the burden shall be upon plaintiff to establish that such intoxication, wilful misconduct or gross negligence was the proximate cause of such death or injury or damage. For the purpose of this section the term 'guest' is hereby defined as being a person who accepts a ride in any vehicle without giving compensation therefor." St. 1929, p. 1580.

In Crawford v. Foster (Cal.), 293 Pac. 841, the plaintiff was injured while riding in an automobile which was being demonstrated to the plaintiff, a prospective purchaser, by a salesman of the defendant-Foster's. In other words, the plaintiff occupied the same relationship to the defendant as does the plaintiff toward the defendant in the instant case. The only question involved was whether or not the plaintiff was a guest within the meaning of the California statute hereinbefore quoted. The court held that the plaintiff was not a guest. It will be noted that the statute defines the meaning of the term guest "as being a person who accepts a ride in any vehicle without giving compensation therefor." The court held that a guest within the meaning of said statute is one who accepts the driver's hospitality and takes a ride for his pleasure or business without making any return or conferring any benefit upon the driver. The court declared:

"Automobile dealers and salesmen are not only willing but anxious to exchange their time and the use of a car for the time and attention of a person who is in the market for such a car. There can be no question that in actual business the one is regarded as an equivalent or recompense for the other * * * The taking of a demonstration of an automobile, with its accompanying possibilities of profit, would not only seem to be a benefit to the dealer, but a return fully proportionate to any benefit conferred on the prospect. * * * And, further, that one who is looking at an automobile with a view of purchasing the same, and who accepts a ride therein as a part of the examination thereof, solely to test its fitness for his use, is not accepting a ride as a matter of hospitality, but is rendering value received for his transportation. Such a person is no more a guest of the dealer than is one who examines and tests goods offered for sale in a store, but the one is just as much a customer as the other. The relationship between the parties here is not entirely dissimilar to that existing between the owner of a store and a customer using an elevator therein. In such a case, the Supreme Court has said: 'Naturally this facility of transportation would increase its patronage and necessarily its profits in business. In fixing the price at which its goods and merchandise must be sold so as to return a profit, necessarily the operating expenses of the establishment, including this elevator service, must be taken into consideration and provided for. The prices charged and paid by customers for goods would include a reimbursement to appellant

for its expenses entailed in the operation of the elevator for its patrons, and hence would constitute a sufficient reward for their carriage, so as to bring appellant within the category of *a carrier of passengers for hire* and subject to the same duties and responsibilities.' Champagne v. Hamburger, 169 Cal. 683, 147 P. 954, 958. The indirect benefit to the merchant is in that case held to be compensation for a ride in an elevator. A similar benefit appears in the instant case, which we think must be held to be a compensation, given and received, for the ride in question." (Writer's italics.)

While the statutes of Connecticut and California and our statute are not identical, yet, upon the question we are now considering, they are analogous. The reasoning of the pronouncements of the courts of our sister states hereinbefore cited is conclusive upon the decisive question involved in the instant case.

It is quite clear that, while the plaintiff was a passenger or person riding in defendant's automobile, yet he was not riding therein as a guest. It is also true that he was riding therein by invitation, and the only question remaining is, Was he or was he not, within the meaning of the statute, riding for hire?

The authorities recognize two classes of carriers, to wit, private carriers and common carriers. But all persons who undertake for *hire* to carry, belong to one or the other of these classes. See 4 R. C. L. 549. A private carrier is one who, without being engaged in the business of carrying as a public employment, undertakes to carry in a particular case *"for hire or reward."* 10 C. J. 38. A common carrier is one who undertakes *"for hire or reward"* to transport or carry for such as choose to employ him from place to place. 10 C. J. 39. The question is, What does it take to constitute hire or reward? In Champagne v. Hamburger & Sons, (Cal.) 147 Pac. 954, the plaintiff recovered for damages for an injury received by her as a prospective buyer while being transported by an elevator from one floor to another in defendant's store. It was contended by the defendant that the plaintiff was not a passenger in the elevator *for reward or for hire.* In holding against the defendant's contention, the court declared:

"We do not think, however, the point has any merit because in our judgment the appellant was not operating its elevator as a carrier of persons without reward. Reward does not necessarily import that there must be a fare paid for carriage in a passenger

elevator in order to constitute the owner thereof *a carrier of persons for hire.* The rule is laid down that an elevator which is operated for the use of the tenants of an office building and their visitors is a carrier of persons *for hire;* \* \* \* The benefits or advantages which the owners of office buildings with elevator service derive through rental from their tenants or the proprietors of hotels or apartment houses derive from their guests or occupants through such installed service is a sufficient compensation or reward to constitute them carriers of passengers *for hire* as to such tenants, guests, occupants, or their visitors for whose benefit the elevator is operated. We perceive no reason why this should not equally apply to the proprietor of a department store operating an elevator to carry customers or prospective customers from one floor of the store to another for the purposes of trade. In no sense is the elevator carriage which he provides for that purpose a service without reward—gratuitous service." (Writer's italics.)

A prospective buyer of an automobile, who at the invitation of the salesman accepts a ride therein as a part of the examination thereof, for the sole purpose of ascertaining whether it complies with his requirements, is not riding therein as a matter of hospitality,—as a mere gratuity,—but is rendering value received for his transportation. See Crawford v. Foster (Cal.), 293 Pac. 841.

Therefore, within the meaning of the statute, the plaintiff was not a guest, but was a passenger for hire. The foregoing being true, the court was right in submitting the case to the jury upon the alleged grounds of negligence. The court did not submit the case to the jury upon the theory of recklessness.

Other propositions urged by appellant are not such as to require specific mention. They are not presented as grounds of error in accordance with the rules of this court. However, we have carefully read the record relative thereto and find no error. For the foregoing reasons, the judgment of the trial court is hereby affirmed. —Affirmed.

STEVENS, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.