[Civ. No. 5128. Third Appellate District.—April 17, 1935.]

ELSIE ROCHA, a Minor, etc., Respondent, v. LEWIS HULEN, Appellant.

F. M. Ostrander for Appellant.

C. Ray Robinson and James D. Garibaldi for Respondent.

PLUMMER, J.—In this action the plaintiff had judgment only against the defendant Lewis Hulen. The other defendants mentioned in the action do not appear upon this appeal, and for convenience, when we use the words "defendant and appellant", same will refer only to Lewis Hulen.

The complaint alleges that on or about the thirteenth day of March, 1932, while the defendant Lewis Hulen, was operating an automobile upon the Pacheco Pass highway, at a point about 5½ miles southwest from the city of Los Banos, in the county of Merced, and was at the same time carrying and conveying in said automobile, without her consent or the consent of her parents, or either of them, the plaintiff Elsie Rocha, did so carelessly and negligently drive his automobile as to cause the same to violently strike and collide with an automobile then and there being driven by one Dominic Falasco, as a result of which there was inflicted upon the person of Elsie Rocha severe and permanent bodily injuries, etc. It was on account of these injuries that judgment was awarded the plaintiff as against the defendant Lewis Hulen, and from which judgment he appeals.

The circumstances involved in this action are the same as those involved in the action entitled *"Dominic Falasco et al. v. Lewis Hulen,* Civil No. 5122" (*ante,* p. 224 [44 Pac. (2d) 469), the opinion in which action was this day filed. As the facts and circumstances involved in this action are practically the same, with the exceptions hereinafter men-

tioned, we refer ·to that case and to all the facts therein stated, as correctly indicating the facts to be considered herein, saving space by reference, and avoiding repetition. The additional testimony necessary to be set forth following the injury to the plaintiff who attended the picnic mentioned in action Civil No. 5122, *supra,* is as follows:

(Testimony of Mrs. Silva): "A rolling-pin come right here, and the baby put hand in the face this way; I stand up and take the hands out; the blood come; I put fingers right here and stop the blood, and the baby start crying; the mother.see the blood and fainted and all; the baby take the left hand and walk with me, that is all, and Charley Machado came and Mrs. Silva—'you tell me Mrs. Silva, you give me baby'; no, I hold the baby, I bring the baby; no, I will take the baby; see, I close the little cut right here and the baby walk along with me, and I gave the baby, I stopped the flow, no, no, I take a white handkerchief I got in the cut and bringing them, I put in arm and take along, and I stay here, just a little spot in blood, and walk to the creek for to wash, that is all. Q. In other words, the little baby was standing in front of you,·and your little boy was ahead of Elsie, is that right? A. Yes, the baby· here, and put both hands in face this way (indicating). Q. And Mrs. Rocha fainted when she saw the blood? A. 'My baby killed, my baby'. Q. Mr. Rocha then took care of his wife, did he? A. Yes. Q. And you took Elsie? A. Yes. Q. Now, with reference to the cut on the forehead, how high up on the forehead was it? A. Well, about here, I tell Charley Machado, you put finger here, stop the blood; I take white handkerchief and never run no more. Q. Did you notice if that cut was through from the eyebrow to the eye? A. Just a little cut right here, see, the rolling pin just slit, come right here (indicating). Q. Was any out— A. Just about the ground this high (indicating). Q. The little girl was crying? A. Yes, crying, and I tell her it is not nothing and stop the crying. Q. And she walked over, how far did she walk before Charley Machado took her? A. Walk with me. . . . The testimony of the father corroborated that of the mother and of Mrs. Silva. The pertinent portion thereof was: 'Q. What happened immediately after the rolling-pin hit Elsie? Did Elsie get hit with a rolling-pin? A. Yes.

Q. Then what happened? A. Then I see get up, see a little blood, never see no more. Q. What were you doing? A. My wife, she faint, and I take care of my wife. Q. After you got your wife taken care of, was Elsie gone? A. Yes.' "

There is no evidence in the record showing either knowledge or consent on the part of either of the parents to the taking of the plaintiff by the defendant to any hospital. While we do not find anything in the testimony as to the age of the plaintiff at the time of the injury, the records included in the transcript show that the plaintiff was of the age of about five years.

The assignments of error and the grounds set forth for reversal are the same as those set forth in action, Civil No. 5122, save and except the question involving the application of section 141¾ of the California Vehicle Act. All the sections of the California Vehicle Act specifically set forth and considered in action, Civil No. 5122, are set forth and relied upon in this action, and the same argument is presented by the appellant here as was presented in the case to which we are making reference. Avoiding repetition, we refer to the opinion filed in action, Civil No. 5122, as a sufficient answer to every question presented concerning the interpretation of the respective sections of the California Vehicle Act involved in this action, and also to all the cases cited in the opinion to which we are referring, as a complete answer to every legal objection urged by the appellant herein, save and except as to one instruction given by the court, which we will hereinafter set forth, and also the question as to whether the plaintiff was a guest within the intent and meaning of section 141¾, *supra.* We also refer to the opinion filed in action, Civil No. 5122, showing that the jury in this case was amply justified in finding the defendant Hulen guilty of negligence.

▮ After quoting all the provisions of section 113 of the California Vehicle Act, save and except subdivision "C", the court gave to the jury the following instruction:

"D-4

"The fact that defendant Hulen was a peace officer did not give him the right to fail to observe the law regulating the operation of motor vehicles, *and if you find from the evidence in this case that defendant Hulen did operate his*

*vehicle in violation of the law as the same is given to you in these instructions, then you may find that said Hulen was guilty of negligence;* and if you find from the evidence that the negligence of defendant Hulen, if any, was the sole proximate cause of the accident in question, then you cannot render a verdict against defendant Frank Dambrosio, and your verdict should be in his favor.''

This instruction being one offered by the defendant Dambrosio, relates specifically to the contention between the appellant and Dambrosio, as to who was guilty of the negligent act, as constituting the proximate cause of the injury to the plaintiff. For the reasons which we have stated in the opinion in action, Civil No. 5122, and the cases cited, it is apparent that this instruction is erroneous, but as it does not touch upon the controversy urged by the plaintiff as to the negligence of the appellant, and as the testimony to which we have referred shows without conflict or any substantial question that the appellant Hulen was guilty of the negligence constituting the proximate cause of the injury to the plaintiff, it clearly appears that no prejudice was, or could be suffered by the appellant on account of the erroneous instruction.

 The appellant asked, and the court refused to give to the jury this instruction, to wit:

''A 'guest' is defined by the Motor Vehicle Act as being a person who accepts a ride in any vehicle without giving compensation therefor. If you find under the evidence in this case that the plaintiff Elsie Rocha was a guest within the meaning of the definition just given you, then she cannot recover from the defendant Hulen, and it is your duty to bring in a verdict in favor of the defendant Hulen.''

This instruction as worded of course called for the jury to pass upon a question of law. No instruction directing the jury to find the facts from which the conclusion of law could be drawn was requested by the appellant. However, if the testimony in the case establishes the facts from which the conclusion would necessarily follow that Elsie Rocha was a guest of the appellant at the time of receiving the injuries complained of, then the judgment should be reversed. If, on the other hand, the plaintiff was not within the intent and meaning of section 141¾, *supra,*—a guest of the appel-

lant,—then no reason is presented why the judgment should be disturbed.

As stated in the case of *Bookhart* v. *Greenlease-Lied Motor Co.*, 215 Iowa, 8 [244 N. W. 721, 82 A. L. R. 1359]: "In order to arrive at the proper construction to be placed upon a statute, it is proper to look at the law as it previously stood, the matter sought to be remedied, and the nature and spirit of the statute. (See, *Latta* v. *Utterback*, 202 Iowa, 1116 [211 N. W. 503]; *Sinott* v. *District Court in and for Clarke County*, 201 Iowa, 292 [207 N. W. 129]; *State* v. *Clairborne*, 185 Iowa, 170 [170 N. W. 417, 3 A. L. R. 392]; *Crawford* v. *Foster*, 110 Cal. App. 81 [293 Pac. 841, 843]. As is well stated in the case last cited: 'It has been held that the terms of a statute should be construed with their intent and purpose in view. (*Evans* v. *Selma Union High School Dist.*, 193 Cal. 54 [222 Pac. 801, 31 A. L. R. 1121].) The purpose and object that the legislature had in mind sometimes throws light upon the meaning of the language used. The situation that this section (one similar to section 5026–b1, Code 1931) was apparently designed to prevent is well known. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation.' "

The reasons mentioned in the foregoing excerpt have been mentioned in the cases of *Crawford* v. *Foster*, 110 Cal. App. 81 [293 Pac. 841], and *Sullivan* v. *Richardson*, 119 Cal. App. 367 [6 Pac. (2d) 567]; also, *Smith* v. *Fall River Joint Union High School District*, 118 Cal. App. 563 [5 Pac. (2d) 930], to which we will hereinafter refer.

None of the reasons set forth in the excerpt from the Bookhart case for the adoption of the guest law appear to be presented by the circumstances surrounding, and which led up to the injury of the plaintiff. While a number of the cases cited by the respective counsel show that the circumstances led the court to declare the injured party a

guest, and in other cases to declare the injured party a passenger, we have here presented circumstances which lead us to the conclusion that the plaintiff does not strictly come within the meaning of either classification. In this particular we may consider first, the language used in the statute involved in the Bookhart case, and then, the wording found in section 141¾, *supra*. The Iowa statute involved in the Bookhart case appears to be a copy of the Connecticut statute, and reads: ''No person transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death, or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others.''

This action specifically refers to persons being transported without payment, etc., and apparently widens the scope and the meaning of the word ''guest'', as it does not take into consideration whether the injured person has taken any action on his part toward becoming a guest of the owner or operator of the vehicle involved in the accident.

Section 141¾, *supra,* reads: ''Any person who as a guest accepts a ride in any vehicle moving upon any of the public highways of the State of California,'' etc., shall not recover for any injury. This section calls for some specific and voluntary action on the part of a person who becomes an occupant of the vehicle moving upon the public highways of the state involved in the accident, resulting in an injury to such occupant. To be a guest one must have accepted the ride in the vehicle involved. We think this imports both a knowing and a voluntary acceptance, and does not include either involuntary or a forced ride.

The word ''accept'' has a definite meaning. In 1 C. J., page 37, it is thus defined: ''To admit and agree to; to accede to, or consent to; to receive with approval; to adopt; to agree to. In the past tense the word is commonly used to signify assent and agreement''. The meaning of the word ''agreement'' is thus set forth in 2 C. J., page 979: ''In its broad and comprehensive sense, demonstrated by general usage, a coming or knitting together of minds; a coming together in opinion or determination; the coming

together in accord, of two minds, on a given proposition. . . . In law, a concord of understanding and intention, between two or more parties, with respect to the effect upon their relative rights and duties, of certain past or future facts or performances; the consent of two or more persons concurring respecting the transmission of some property, right, or benefits, with the view of contracting an obligation, a mutual obligation," etc.

The testimony of the appellant in this case is to the effect that when the child was brought to where the appellant and some others were standing, someone asked the appellant if he would take the child to the hospital, and he took the child to the hospital without the consent of her parents, or either of them, without interviewing either of the parents, and we may add, there is not a word of testimony indicating that the child, if she was competent to give consent, was ever asked a single question, but was simply placed in the automobile and driven away. We find nothing in the record by which the inference of consent may be drawn. It is all to the effect that the parents did not know what had become of the child; that she was taken away while the father was looking after the mother who had temporarily fainted at the sight of blood. No examination was made as to the injury suffered by the plaintiff for which she was being hastened to an hospital.

The liability of parents to care for their children is not involved in this action, and, therefore, appellant's reference to section 270 of the Penal Code requires no answer. The facts show that the child was taken away without the knowledge or consent of either of the parties as we have stated; nor is there anything in the record indicating that the father or mother, or either of them, by any act or word, had indicated any intention not to properly look after the welfare of the plaintiff.

Section 141¾, *supra*, does include within its terms the meaning of the word "guest", within the intent of the legislature, as one who accepts a ride in a vehicle without giving compensation therefor, but the words "without giving compensation therefor" are dependent upon the previous words found in the same clause or paragraph of the section, which again specifically mentions the words, "a person who accepts a ride". A passenger, of course, is one who accepts

a ride and returns compensation in some form, or that compensation in some form is contemplated. There is nothing in the record, as we have stated, which indicates that the plaintiff ever accepted the ride, or indicated any intention whatever to make compensation therefor. Hence, she does not come within the classification of either passenger or guest. The legislature, at the time of enacting the section referred to, evidently had in mind the redress of an obvious wrong, to wit: the readiness with which both driver and guest would pool issues to exact tribute from an insurance company. The legislature, we think, never had in mind and never intended to include within the terms of section 141¾, *supra*, the exempting of one from liability who would take a minor child five years of age, without the knowledge or consent of her father or mother, or either of them, and without the consent of the child (if it be held that a child of that age could give consent), and proceed in the reckless driving which the testimony shows to have occurred in this case, and exempt such a person from the consequences of his lack of judgment and negligent action. Considering the whole section and the intent and object to be accomplished by the legislature by its enactment, we conclude that Elsie Rocha was neither a passenger nor a guest in the automobile driven by the appellant Hulen at the time of ' the accident, and at the time of receiving her injuries by reason of his negligence, but was in truth and in fact simply an involuntary occupant of the vehicle driven by the appellant.

In all the cases having to do with guest statutes, it appears that the various courts have had distinctly in thought the question of whether the circumstances presented bring the case within the intent and purpose to be accomplished, and the evils to be remedied by the enactment of such statutes, as well as whether the plaintiff is within the language appearing in the statutes being considered.

The common-law right of having redress for injuries wrongfully inflicted, being lessened by such statutes, necessitates strict construction, and also, that cases be not held within the provisions of such statutes unless it clearly appears that it should be so determined. The following cases illustrate this statement:

In *Bookhart* v. *Greenlease-Lied Motor Co., supra,* the facts show that the plaintiff was invited to ride in an auto-

mobile of a salesman, and accepted a ride therein for the purpose of ascertaining whether the plaintiff would become a purchaser of the automobile being demonstrated. Under such circumstances, although invited to ride, and having accepted the invitation to ride in the automobile, the plaintiff was held not to be a guest within the meaning of the guest statute.

In *Crawford* v. *Foster, supra,* the court had before it a similar question, and held that one invited to ride, and accepting a ride in a demonstration automobile driven by an automobile salesman, was not a guest within the contemplation of the legislature in enacting the statute.

In *Sullivan* v. *Richardson, supra,* the plaintiff was invited by a representative of a real estate firm, and accepted the invitation to go and view lands held for sale by the real estate company, as a prospective purchaser. It was there held that the plaintiff was not a guest.

In *Smith* v. *Fall River Joint Union High School District, supra,* this court held that the little girl injured while being transported in a school bus was not a guest within the meaning of the statute.

In *Kastel* v. *Steiber,* (Cal. App.) 297 Pac. 932, it was held that a minor compelled to take a ride against her will in an automobile was not a guest.

Other cases might be cited where the circumstances required the court to hold that the injured person was not a guest, and also, cases might be cited where the circumstances required the court to hold the plaintiff in the action to be a guest, but the foregoing cases which we have mentioned we deem sufficient to support the conclusion at which we have arrived, that the plaintiff in this action was not a guest within the intent and meaning of section 141¾, *supra,* and does not come within the purposes to be accomplished, or the evils to be remedied by the statutes.

In the consideration of section 141¾, *supra,* and in determining the intent of the legislature as to whom its provisions should apply, we may add that a five year old child has no capacity to "accept", in any legal sense.

The appellant in this action, as in case Civil No. 5122, relies upon Act 2602, Deering's General Laws, as exempting him from liability. We fail to find any merit in this contention, as the appellant was not a member of

either a police or a fire department. Even under such circumstances, full exemption is not granted.

In addition to the cases which we have cited, we may refer to the case of *City of Sacramento* v. *Hunger*, 79 Cal. App. 234 [249 Pac. 223], in which the liabilities of such employees are carefully set forth.

 Without further reviewing the evidence which we have set forth in action Civil No. 5122, and supplemented herein, we think it clearly appears amply sufficient to support the verdict, and that the jury could not have reasonably, in light of the facts, come to any other conclusion. From which it follows that any technical errors in the instructions given by the trial court under section 4½ of article VI of the Constitution cannot be held in any respect prejudicial.

Upon the authorities reviewed, and the views expressed in the opinion filed in action, Civil No. 5122, and the additional views herein set forth, we think the judgment in this action should be affirmed. And it is so ordered.

Thompson, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 13, 1935.