SUSAN HORST, a minor, by A. W. HORST, her father, appellant, v. MABEL HOLTZEN, appellee.

No. 49419.

(Reported in 90 N.W.2d 41)

MAY 6, 1958.

V. O. De Witt, of Pizey, Sears & De Witt, of Sioux City, for appellant.

John W. Gleysteen and Duncan M. Harper, of Harper, Gleysteen & Nelson, all of Sioux City, for appellee.

THOMPSON, J.—The case before us presents three questions for decision. Two of them are matters of the first impression in Iowa, and are difficult and important. In order that they may be understood the facts of record and the procedures had in the trial court must be stated. So far as they concern the first two points, the facts were stipulated.

On May 18, 1955, a group of ladies, residing in Sioux City, planned to attend a meeting of a church sewing circle in Jefferson, South Dakota. The defendant had agreed to furnish transportation for at least the first stage of the journey. Mrs. A. W. Horst, the mother of Susan Horst, telephoned the defendant and asked her for a ride for herself and her mother. Susan Horst was at the time thirteen days old. The defendant agreed to pick up Mrs. Horst and her mother, and did so, at about 1:30 p.m. Mrs. Horst brought Susan with her, holding her in her lap. She also brought her young son, Stephen. Mrs. Horst and Susan were in the front seat, on the right-hand side, with her mother and Stephen and another woman, Mrs. Duke, whom the defendant was also transporting, in the back. We shall hereinafter refer to Susan as the plaintiff, although the action is brought by her father as next friend.

With this seating arrangement, the defendant stopped her automobile on the west side of a street known in the record as Grandview, headed south on a downhill slope. Apparently the brake was set; at least the car remained stationary, about a car's width from the west curb, with the motor running. An elderly lady, Mrs. Davis, who was also to make the trip, lived on the east side of Grandview opposite the point where the car stopped. The defendant got out of the car and went to assist Mrs. Davis across the street and into the car. Mrs. Davis got in through the left front door and under the wheel; as she did so, or immediately afterward and before the defendant had entered the car it

started, caromed off a parked car, ran down the hill and into a schoolhouse. The plaintiff was severely injured.

Plaintiff's suit having been brought and the matter being at issue, plaintiff made her application for an adjudication of law points, under rule 105, R.C.P. The requested points to be adjudicated were these:

"1. Can a month-old infant be a passenger or a guest within the provisions of section 321.494 of the Code of Iowa?

"2. Can a person in charge of an automobile be the operator of it within the provisions of section 321.494 of the Code when such person is absent from the automobile?"

It is evident that if either or both of the foregoing questions should be answered in the negative section 321.494 (the Iowa guest statute) would not apply, and the burden upon plaintiff to prove her case would be that of showing negligence only. But if both points were determined in the affirmative plaintiff would be put to the necessity of showing recklessness. One count of her petition claimed upon specific negligences; one upon res ipsa loquitur (likewise depending upon negligence); and one alleged recklessness. The trial court, through Judge Ralph C. Prichard, adjudicated both law points submitted to it by holding that the plaintiff was a guest and the defendant was the driver and operator of the car, both within the meaning of section 321.494, supra. This left plaintiff only her recklessness count upon which to rely; and, the case coming on for trial upon this issue, before Judge R. W. Crary, a verdict was directed for the defendant at the close of plaintiff's evidence; the court thereby holding that no jury question had been engendered upon the question of recklessness.

I. The errors assigned raise the questions suggested by the application for adjudication of law points set out above, and a third one as to the correctness of the trial court's ruling that recklessness was not shown, as a matter of law. We shall first determine whether a small child, in this case an infant thirteen days of age, when riding with and in the care of its mother and by her consent, is a guest within the meaning of section 321.494. Since we think the exact wording of this statute is important, we set it out.

"321.494. Guest statute. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

The purpose for which this statute was enacted is also material. We have given consideration to this thought in 'Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8, 11, 244 N.W. 721, 722, 82 A. L. R. 1359, 1362, where we quoted with approval from Crawford v. Foster, 110 Cal. App. 81, 87, 293 P. 841, 843: " '* * *. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation. * * *.' "

There is a considerable volume of authority upon the question of a minor of tender years qualifying as a guest under the statutes which have been adopted generally in the various states. Some of them require in effect an invitation and an acceptance, as for example California and Nebraska. It is argued by the appellant here that being a guest implies an invitation, express or implied, and an acceptance; and that a thirteen-day-old infant is incapable of accepting, and so cannot be a guest. Except for dicta found in a few cases, there are none which hold flatly that such a child may not under some circumstances be a guest. Other cases, relied upon by the defendant-appellee, say that the acceptance may be by the parent or other person having legal custody and care of the infant. The cases cited by the plaintiff are, without exception, those in which a child was taken into an automobile, absent its natural guardians or any consent or approval from them, or, as in Hart v. Hogan, 173 Wash. 598, 24 P.2d 99, in which the accompanying parent was herself not a guest. There is, in fact, in the latter case an intimation that the child's status follows that of the parent. Likewise in Kudrna

v. Adamski, 188 Ore. 396, 216 P.2d 262, 16 A. L. R.2d 1297, from which the plaintiff quotes, the driver of the car was not its owner, but was operating it at the request of the father and mother of the injured infant because the father, who was the actual owner, was not able to make the trip. There is dictum which supports plaintiff's position; but the case has been distinguished and an opposite result reached in the later case of Welker v. Sorenson, 209 Ore. 402, 405, 306 P.2d 737, 738. The Oregon Supreme Court pointed out, in the later case, that in the Kudrna case the mother herself was not a guest, and that it had there said: " 'We do not decide that a child of tender years cannot, under any circumstances, be a guest.' " It held in the Welker case that when the child was riding with its mother, who was a guest, her children, in her custody, were also guests.

The plaintiff relies largely upon two cases: Rocha v. Hulen, 6 Cal. App.2d 245, 44 P.2d 478, 483, and Fuller v. Thrun, 109 Ind. App. 407, 31 N.E.2d 670. It will be observed that neither of these cases was decided by a court of last resort. In neither case was the injured child accompanied by its natural guardian, nor was there any evidence of consent of such guardian to the acceptance of the ride. There is dictum in each case which says that an infant incapable of accepting an invitation to ride cannot be a guest, under the wording of the particular statute involved. The distinction is pointed out in the later case of Buckner v. Vetterick, 124 Cal. App.2d 417, 269 P.2d 67, 69. The California statute, section 403, Vehicle Code, defines a guest as one who "accepts a ride in any vehicle upon a highway without giving compensation for such ride." "Accepts", it is urged, implies an invitation and an acceptance, and a small child, being incapable of consenting, cannot become a guest. The Buckner case, supra, points out that many important decisions, such as whether an operation shall be performed or other medical services rendered, are made constantly and necessarily for minors by their parents. To this might be added decisions as to what church, and what school, the child shall attend; where it shall live, in what amusements it may indulge, what journeys it may take, and a host of other important determinations. There seems no good reason why the natural guardian, usually the parent, could not accept

an invitation to ride gratuitously in a motor vehicle, for the child. Buckner v. Vetterick so holds. We are pointed to no case in which the consent of the parent was actually given in which it was held that the child was not a guest. In this category is the recent case of Green v. Jones, 136 Colo. 512, 517, 319 P.2d 1083, 1086. It is there flatly stated, it is true, that, "To achieve the status of 'guest' there must be an invitation, expressed or implied, and an acceptance, formal, informal, or by act or deed." The case then goes on to say that the injured child, age two years, could not accept an invitation and so could not be a guest. She had been left overnight with her grandmother, who on the next morning undertook to transport her in her automobile, and in so doing injured her. There is no showing whether the trip was with the consent of the child's parents. It is of course for the Colorado court to interpret the statutes of its own state; but so far as its opinion holds an invitation and acceptance are always necessary to create a "guest" relationship, or that where the statute makes such a requirement a parent or other natural guardian may not accept for the child, we do not agree. The strong currents of authority and logic are both, we think, to the contrary.

In addition to Welker v. Sorenson and Buckner v. Vetterick, both supra, there are many cases holding that a child of tender years may be a guest. Many of these cases say that no invitation, implied or express, or acceptance are necessary to create the guest status. The Arkansas Supreme Court has said: "It will be observed that in defining a guest the statute makes no exception in favor of minors and we have no authority to write that exception into the statute." Tilghman v. Rightor, 211 Ark. 229, 232, 199 S.W.2d 943, 945.

In Morgan v. Anderson, 149 Kan. 814, 816, 817, 89 P.2d 866, 868, in construing a statute reading: " '* * * [a] person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation * * *' " said: "The weight of authority is that a minor as well as an adult can be a 'guest,' even though unaccompanied by a parent or guardian and even though no express consent of parent or guardian has been shown."

The Texas Court of Civil Appeals was faced with an interesting situation involving the question whether one incapable of assenting to transportation or accepting an invitation to ride could be a guest, in Linn v. Nored, 133 S.W.2d 234, 237. There the appellant contended he could not have been a guest because at the time he rode he was so intoxicated he was incapable of knowing what he was doing or of assenting to anything. The court found no merit in this position, holding:

"Our guest statute clearly provides that the creation of the relationship is based upon the fact that no consideration is paid for the transportation; * * *.

"Manifestly our statute makes no distinction between a drunk and sober person, or between minors and adults, or sane and insane persons; * * *."

The Massachusetts case of Balian v. Ogassian, 277 Mass. 525, 528, 179 N.E. 232, 233, 78 A. L. R. 1021, 1024, is also in point. Here, with reference to a boy four and one-half years of age, the Supreme Judicial Court of Massachusetts said:

"It is beyond controversy that the defendant's undertaking to transport the minor plaintiff was gratuitous. * * * Generally such an undertaking imposes no liability for ordinary negligence. * * * The minor plaintiff's tender years do not take these cases out of the general rule."

See also Langford v. Rogers, 278 Mich. 310, 270 N.W. 692, 695; Shiels v. Audette, 119 Conn. 75, 174 A. 323, 94 A. L. R. 1206; Eilts v. Bendt, 162 Neb. 538, 76 N.W.2d 623, 629; and Albrecht v. Safeway Stores, 159 Ore. 331, 80 P.2d 62, 65.

The authorities holding that under some circumstances a small child incapable of assenting to becoming a guest in a motor vehicle is not a guest under the statutes operate only in a narrow field. Language used in some of them tends to make an otherwise simple question complicated and confused. Properly classified they fall into two overlapping categories: cases in which the child was incapable of accepting an invitation to ride and was not in charge of a natural guardian who accepted for him; and cases in which the statute itself defined a guest as one who accepts an invitation. Whether so distinguished and classified they are sound, we are not called upon to determine. But the rule when neither of these conditions exists is clear. As

the Arkansas Supreme Court cogently remarked in the passage quoted above, the statute makes no distinction between adults and minors, and the courts have no right to amend the statute by so doing.

A "guest", as defined by Webster's New International Dictionary, Second Edition; is: "A person entertained in one's house or at one's table; a visitor entertained without pay; hence, a person to whom the hospitality of a home, club, etc., is extended."

Highly significant is the definition given in 2 Restatement, Torts, page 1272, section 490: "The word 'guest' is used to denote one whom the owner or possessor of a motorcar or other vehicle invites *or permits* to ride with him as a gratuity \* \* \*." (Italics supplied.) Under this definition mere permission is sufficient to constitute a free rider a guest. Either invitation or permission is sufficient to create the relationship. The definition has been referred to, with approval, by the Supreme Court of Illinois in Miller v. Miller, 395 Ill. 273, 69 N.E.2d 878, 882.

The record in the case at bar shows without dispute that plaintiff's mother asked the defendant, via telephone, for the ride to the meeting of the church society. This emphasizes the permissive rather than the invitational feature of the transportation. Of a somewhat similar factual situation, the Massachusetts Supreme Court has said: "He did nothing and said nothing to invite them, and the nearest analogy that occurs to us is that of a self-invited guest in whose presence the host acquiesces and whose enjoyment he seeks to promote, or that of a gratuitous bailee." West v. Poor, 196 Mass. 183, 185, 81 N.E. 960, 11 L. R. A., N. S., 936, 937.

Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Ed., Volume 4, section 2351, says this: "\* \* \* where, by statute or common law, gross negligence or wanton, willful, or reckless misconduct is essential to the existence of liability on the part of a host to a gratuitous invitee, the rule applies with full force, although the guest is an infant \* \* \*."

Finally, our own statute, section 321.494, supra, makes the legislative intent clear that a "guest" may be a person other than one riding by invitation; as by permission. The statute

refers to "any * * * person riding in said motor vehicle as a guest *or* by invitation and not for hire." (Italics supplied.) Not only is the disjunctive used, but unless "guest" means something other or in addition to one riding "by invitation", the latter phrase is redundant and meaningless. The legislative intent is of course the important question; we think it must have had in mind permissive as well as invited riders. It is no doubt true that the relation of guest under the statute cannot be forced upon one; it must be by permission rather than command. But here the mother of the plaintiff requested the transportation, and permission was granted by the driver, the defendant. The definition quoted from Restatement, Torts, supra, applies; as well as the basic reason for the enactment of the guest statute stated in Bookhart v. Greenlease-Lied Motor Co., also supra. The trial court correctly ruled at this point that the plaintiff was a guest within the meaning of our statute.

II. The plaintiff-appellant further urges that the defendant was not the operator of the automobile at the time of the injury, because she was not in the car and so could not have had control of it. It is the apparent thought that if the defendant was not the operator of the car, the plaintiff was not riding in it as a guest within the meaning of section 321.494, supra; and so the defendant would be liable for ordinary negligence. While the real question is whether the plaintiff was riding as a guest, the parties have argued the point as if it were determined by the question whether the defendant was operating the car, and we accept the case at this point as made by them.

The plaintiff calls attention to section 321.1, subparagraph 42, which we quote: " 'Operator' means every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway." She also relies heavily upon Puckett v. Pailthorpe, 207 Iowa 613, 223 N.W. 254; Twogood v. American Farmers Mut. Auto. Ins. Assn., 229 Iowa 1133, 296 N.W. 239; City of Harlan v. Kraschel, 164 Iowa 667, 146 N.W. 463; and Griffin v. McNeil, 198 Iowa 1359, 201 N.W. 78. Of the latter two cases, it is sufficient to say that they turned upon the question of whether a motor vehicle parked at the curb, with the motor turned off and no lights showing, was so standing in violation of a city ordinance requiring lights, in the Kraschel case,

and of a state statute, in the McNeil case. These enactments were quite similar, the Harlan city ordinance having been drawn in attempted conformity with the state statute. Each made the requirement that a motor vehicle being operated upon a public highway at night should display certain lights; and each holding was that the car in question was not being operated within the meaning of the ordinance, or the statute. But each decision turned largely upon phrases in the legislative enactments "in the direction in which the motor vehicle is proceeding" or "in the direction from which the motor vehicle is proceeding." Obviously, said the court, a vehicle is not proceeding when it is standing still. The question in each case was the proper construction of an Act of the legislative body, and the entire Act was taken into consideration. The construction was right in each of the cases, but they throw little light upon the meaning of section 321.494.

Twogood v. American Farmers Mut. Auto. Ins. Assn., supra, concerned the question whether one who, sitting at the right of the driver, takes hold of the wheel can be said to have been the sole operator of the car. A policy of collision insurance provided that it would not apply when the automobile was being operated by a person under the age fixed by law or unauthorized by law to drive. A minor with no driver's license was under the wheel and operating the mechanism, except that just before the accident the plaintiff, the owner of the car, who sat beside the driver, placed his hand upon the wheel. The case holds only that the unlicensed driver was still operating the car, and at most the plaintiff was only attempting to "aid in the operation of the car."

Puckett v. Pailthorpe, supra, from which plaintiff quotes at length, is so clearly distinguishable upon the facts that it gives no aid. The parties having met at a café, the defendants offered plaintiff a ride to her home. Their car was parked near the café, and plaintiff, having finished her meal before the defendants, it was suggested that she seat herself in their car to await them. As she took hold of the door of the car to open it, it fell from its fastenings, injuring her. We pointed out that the car was not being operated within the meaning of the guest

statute (page 618 of 207 Iowa): "Her object in entering was not then and there to become a passenger during the interval that appellees were eating their dinner, but rather it was her intention to sit in the car and wait until the driver came * * * in order that she could then be a passenger. * * * Had the appellant ridden to the restaurant with appellees as their guest, on a journey which contemplated the stop for the noonday meal, and intended a return trip home again, during all of which time appellees were the drivers in charge of the automobile, then a different question would be presented." The "different question" referred to in the Puckett case, supra, is the identical one now presented in the case at bar.

The plaintiff presents, out of context, a quotation from Mould v. Travelers Mutual Cas. Co., 219 Iowa 16, 257 N.W. 349, to the effect that one cannot be said to be driving or riding in a car within the usual meaning of the words when such car is standing still. Yet in the same case, page 22 of 219 Iowa, page 352 of 257 N.W., we find this language: "In both of these cases, however, the insured was on a journey; he had left the starting place and had not reached the point of destination. In such a case it may be said that in the plain and ordinary meaning of the words such person was driving or riding, in the same way that a person while in a car on a journey would commonly and ordinarily be said to be driving or riding, even though his progress forward was temporarily stopped by an obstacle in the road, or by stopping to make an inquiry, or by stopping at an intersection." The analysis of possible conditions that may occur aids the defendant more than the appellant.

The identical question involved in plaintiff's contention at this point has not been squarely decided in Iowa, although we think the dicta in Puckett v. Pailthorpe and Mould v. Travelers Mutual Cas. Co., both supra, point the way to a proper answer. What we must decide is whether a person who has started on a journey, has picked up several passengers and stops for still another, leaving the motor running, and is gone only long enough to walk across the street to assist a prospective passenger and has returned to the car but has not re-entered it when an accident occurs, is still at that time operating the car; and whether the passengers already in the car are guests within

the meaning of our statute. Cases decided under similar circumstances in other jurisdictions have without exception, so far as we have discovered, answered in the affirmative. We shall briefly refer to some of them.

In Stroud v. Board of Water Commissioners, 90 Conn. 412, 414, 97 A. 336, the Connecticut Supreme Court said: "It is self-evident that an injury may be received after the operator has brought his car to a stop, and may yet be received by reason of its operation. The word 'operation', therefore, must include such stops as motor vehicles ordinarily make in the course of their operation." The facts were that the plaintiff had left his parked car near a hotel at which he planned to stop during his journey.

Liberty Mutual Ins. Co. v. McDonald, 6 Cir., Tenn., 97 F.2d 497, 498, 499, involved a case of a tractor-trailer disabled and left on the highway, the load being transferred to another vehicle. It was held that the disabled tractor and trailer were still being "operated." The court said: "Without deciding just when the operation of the equipment terminated, it is clear enough that it had not ceased while the unit was still parked on the highway as the result of disablement."

In Commercial Standard Ins. Co. v. Bacon, 10 Cir., Okla., 154 F.2d 360, 363, is this statement: "Thus, it has, been held that the operation of cars upon the highway includes not only cars in motion, but also those which in the course of operation were parked or left standing upon the highway; that it included ordinary stops upon the highway as being incidental to the operation; that it included a vehicle while it is stopped in soliciting trade or delivering merchandise."

Cook v. Crowell, 273 Mass. 356, 173 N.E. 587, 588, concerned a fish peddler who stopped his vehicle beside the highway for the purpose of calling on a customer. Before he had re-entered the car a collision occurred. It was held he was operating the car at the time. In Castle v. McKeown, 327 Mich. 518, 520, 42 N.W.2d 733, 734, the plaintiff and defendant were returning in defendant's automobile to their homes following a Sunday afternoon outing at a lake. During the return journey plaintiff became ill. Defendant stopped the car, plaintiff got out because of her illness, and defendant to inspect a tire. As plaintiff

attempted to re-enter the car, which had been left with the motor running and the emergency brake not set, it started, threw her to the ground and ran over her. Here both parties had left the car and the defendant had not yet re-entered it when the injury to plaintiff occurred. The Michigan Supreme Court held: "In the instant case the journey had not ended. The interruption was not over five minutes and was for purposes directly related to the trip and mutually beneficial to both driver and passenger. Transportation from the lake to plaintiff's home was still in progress at the time Mrs. Castle was injured. She was then a guest being transported within the meaning of the statute."

Pertinent language appears in a decision of the Supreme Court of New York, Hand v. Frazer, 139 Misc. 446, 447, 448, 248 N. Y. S. 557, 559. Here a truck owned by the defendant was standing by the side of the highway when a collision occurred. The question involved was whether a statute providing for service upon a nonresident was "being operated" when not in motion. The New York court said:

"No automobile can be put to reasonable use upon our highways in perpetual motion and the Legislature did not so contemplate. * * *

"The word 'operated' is not, as the defendant contends, limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such stops are to be regarded as fairly incidental to its operation."

Somewhat analogous to our problem in the case before us are cases holding that a person riding gratuitously in a motor vehicle who alights therefrom during the course of an uncompleted journey is still a guest while out of the car. See Hobbs v. Irwin, 60 N. M. 479, 292 P.2d 779, 781, and citations.

We conclude that the defendant was operating the car at the time the accident occurred in the case at bar. She had left the motor running while she went across the street for a temporary purpose directly connected with the journey and for a time of a few minutes only. The journey upon which the party had started was not completed. If the defendant was not operating

the automobile, no one was. It had been entirely in her control during the first part of the journey, and was to be so during the remainder. The running motor was a result of her handling the mechanism. As to section 321.1, subparagraph 42, supra, we think it must be construed in the light of reason. We think the purpose of the statute is to say that only one person may "operate" a motor vehicle. State v. Myers, 207 Iowa 555, 556, 223 N.W. 166, cited with approval in Twogood v. American Farmers Mut. Auto. Ins. Assn., supra, at page 1142 of 229 Iowa. So the words "in actual physical control" mean that it is the actual driver rather than an employer whose employee is driving, or rather than a person who may be in the vehicle directing the driver. These distinctions are made in the Twogood case, supra, pages 1138, 1139 of 229 Iowa, pages 242, 243 of 296 N.W.; Appleman on Automobile Liability Insurance, Volume 7, page 179; Devitt v. Continental Casualty Co., 154 Misc. 603, 277 N. Y. S. 844, 849.

It is of course obvious that the defendant was not in actual physical contact with the mechanism when the car started down the slope. If she had been in the car this might likewise have been true; yet it could hardly be contended that she was not "operating" it. She might have been sitting behind the wheel for a moment before engaging the gears, for any one of a number of reasons. And a driver whose car is proceeding along the highway is not always in "physical control" of it. Many accidents occur because a driver loses control of his vehicle. The statute must be read in the light of common sense, as a guide to what the legislature intended in enacting it. Both the authorities cited above and the rule 'of reason which they apply indicate that a car may be operated although the operator leaves it, during the course of a journey, for a temporary purpose. We think the defendant was operating her automobile during the few moments she left it to assist her prospective guest across the street; and that nothing in the situation changed the plaintiff's status as a guest under section 321.494.

III. It remains only to determine whether the trial court properly granted defendant's motion for a directed verdict at the close of plaintiff's evidence. Here the problem is whether there was a jury question as to defendant's recklessness in op-

erating as she did. We think the court's ruling was correct. "Recklessness implies 'no care, coupled with disregard for consequences.'" Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 54. Measured by this standard, no recklessness appears. Perhaps due care would have dictated a different place to stop the car, or more precaution in securing it, or in helping the passenger into it. But we find no disregard for consequences. The defendant was a Good Samaritan engaged in aiding her fellow church members to attend a meeting. She went further and undertook to aid one of them to cross the street to enter the car: Nothing in the record indicates anything from which a jury would be justified in finding indifference to life or limb, or disregard of danger.

Nor was the situation such that the acts of the defendant made a "catastrophe" probable rather than merely possible, as the plaintiff urges. Nothing more than a possibility of danger fairly appears. A discussion of dissimilar facts in other cases would be of no benefit. The trial court was correct in each of its rulings of which complaint is made.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.