[Civ. No. 9721.   Second Appellate District, Division One.—December 2, 1935.]

JAMES BOYSON, Respondent, v. JOHN C. PORTER et al., Defendants; CITIZEN PRINT SHOP, INC. (a Corporation), et al., Appellants.

Harry D. Parker and Horace W. Danforth for Appellants.

Edwards & Taylor and Harvey D. Taylor for Respondent.

ROTH, J., *pro tem.*—Respondent was on June 10, 1933, the day of the accident hereinafter set out, and had been for some time prior thereto, employed by the committee seeking to elect John C. Porter, mayor of Los Angeles. The evidence discloses that on the day mentioned, the Citizen Print Shop, Inc., was good ''enough to let us (the committee) have the use of their truck'' and its driver, one Emery. Plaintiff's

action for damages was commenced against the members of the committee, Citizen Print Shop, Inc., and Emery. Motions for directed verdicts were granted as to all named defendants except Citizen Print Shop, Inc., and Emery, against which two last-named defendants, hereinafter referred to as appellants, the jury before which the case was tried brought in a verdict of $2,500.

Emery drove the truck mentioned to various places, in accordance with directions of plaintiff. On the particular ride in question, a capacity load of furniture was being transported to a certain church building and Emery and another person were riding in the cab. Plaintiff was sitting in a chair facing forward. The chair rested on the floor of the truck near the rear, which was open, there being no end gate, but close enough to the side to enable plaintiff to hold onto the "stake body" built over the floor of the truck along its sides. The floor of the truck was "galvanized sheet iron" and was "perfectly smooth". It further appeared that the driver of the truck by looking through the back of the cab could see plaintiff. It also appears that there was room in the cab for plaintiff, but that on the trip in question he was riding in the position mentioned, holding to the side of the truck, steadying himself so, as he put it, he "wouldn't fall out". With plaintiff riding in this position, the truck came to a standstill in front of the church building, and while the truck was stopped, although the motor was still running, plaintiff relaxed his hold, but his arm still "lay on the side of the truck" and with the other arm he had hold of the chair in which he was sitting. When plaintiff was in this position, the truck lurched forward with a jerk, throwing plaintiff to the street, as a consequence of which the plaintiff sustained fractures of the spine, particularly to the transverse processes of the fourth and fifth lumbar vertebrae, and an injury to the back of his head. As summarized in the bill of exceptions, plaintiff described the accident as follows:

"When the truck reached the church and stopped, I relaxed my hold, but did not remove my arm from the side of the truck, and. I still had hold of the chair. After the truck stopped, it jerked forward and I went over the end.

"I do not know whether the chair slipped off the back of the truck or whether I fell backwards off the chair. When

I fell, the truck stopped, and Mr. Emery and the other gentleman came around. I do not know if Mr. Emery was the first or the other gentleman was. They both came there when I was sitting up on the ground, on the decomposed granite on the shoulder of the street. They assisted me to the church and I sat on one of the chairs that came on the load. The others unloaded the truck. . . .

"I did not say anything to Mr. Emery about jerking the truck forward, but I did ask him why he had not taken the car out of gear. I don't know whether he made any response or not. I did not say that Mr. Emery caused the accident, and I do not remember that I said I thought he had been negligent but that it wasn't his fault."

The trial took place six months after the accident, at which time the evidence was that plaintiff would be required to wear a plaster girdle for at least three months and that even though the fractures would in all probability heal, there would still remain some disability.

Appellants appeal from the order entered on the verdict and from the order denying their respective motions to enter judgments in their favor notwithstanding the verdict. ▮ The particular point is that the evidence does not warrant a finding of negligence on the part of appellants. There is no conflict in the evidence to the effect that Emery brought the truck to a standstill at a place where it could have been properly unloaded, and where, except for the few feet that the truck lurched forward, it actually was unloaded. Under such circumstances, it cannot be said as a matter of law that plaintiff was not justified in relaxing his hold on the side of the truck. When reasonable minds can draw different conclusions from the facts, negligence is a question of fact for the jury. (*Whitmeyer* v. *Southern Pacific Co.*, 102 Cal. App. 199 [282 Pac. 1005]; *Grimes* v. *Richfield Oil Co.*, 106 Cal. App. 416 [289 Pac. 245].) For the same reason, it can hardly be said that plaintiff was guilty of contributory negligence as a matter of law. As said in *Whitmeyer* v. *Southern Pacific Co., supra,* at page 203:

" . . . rarely is a set of circumstances presented which enables a court to say, as a matter of law, that negligence has been shown. It is usually a question of fact for the jury, an inference to be deduced from the circumstances of each

particular case.'' ■ If the evidence was sufficient to sustain the verdict, as we believe it was, it follows that the motions for nonsuit, directed verdict and for judgment notwithstanding the verdict were properly denied. It would have been error for the court to grant a nonsuit, and the power of the court to direct a verdict or to grant a motion for judgment notwithstanding the verdict is bottomed on the same rules which control the action of a court on a motion for nonsuit. (*Perera* v. *Panama-Pacific International Exposition Co.,* 179 Cal. 63 [175 Pac. 454]; *Estate of Caspar,* 172 Cal. 147 [155 Pac. 631]; *Card* v. *Boms,* 210 Cal. 200 [291 Pac. 190]; *Estate of Flood,* 217 Cal. 763, 768 [21 Pac. (2d) 579].)

■ Appellants by affidavit of their counsel, the averments of which were almost entirely made on information and belief, which affidavit was used in the proceeding on the motion for new trial, charged that the entire jury panel, from which was selected the jury that tried the case, was drawn from persons assembled at the headquarters of the Catholic Welfare League, and that the prospective jurors admitted this fact on *voir dire* examination by appellants' counsel. Aside from the fact that an affidavit on information and belief charging such facts is ''unavailing for any purpose'' (*Gay* v. *Torrance,* 145 Cal. 144, 151 [78 Pac. 540]; *People* v. *Findley,* 132 Cal. 301 [64 Pac. 472]; *People* v. *Williams,* 24 Cal. 31, 40); there is nothing in the record to indicate that the jurors concealed anything or that any of them did not have the proper qualifications, or that they were not regularly selected pursuant to section 227 of the Code of Civil Procedure.

This method of selecting a venire is not, however, to be recommended. The language of Mr. Justice Curtis in a concurring opinion in *Fitts* v. *Superior Court,* 4 Cal. (2d) 514 [51 Pac. (2d) 66], referring in that case to a method of selecting grand jurors, is, we feel, appropriate to the situation presented in this case. The learned justice says at page 376 of that opinion: ''The method employed by the trial court in the selection . . . of the jury . . . was so unusual and unprecedented and so fraught with gravest dangers that it is a matter of regret . . . that there is not to be found some legal authority whereby the courts might declare all acts of a jury so selected absolutely void . . . ''

■ The instructions given on the measure of damages when read together disclose no error, and it cannot be said that the verdict rendered is such that it patently appears to have been rendered as the result of passion or prejudice on the part of the jury or any of the jurors. (*Bonneau* v. *North Shore etc. Co.*, 152 Cal. 406 [93 Pac. 106, 125 Am. St. Rep. 68].) ■ There is no merit in appellants' contention raised for the first time on oral argument prior to the submission of this case on appeal, that respondent was a guest and that, since there was no showing of wilful misconduct, the evidence does not sustain the verdict. Respondent was not a guest. (*Haney* v. *Takakura*, 2 Cal. App. (2d) 1 [37 Pac. (2d) 170].)

The judgment and the order denying motion of appellants for the entry of judgment in their favor notwithstanding the verdict are, and each of·them is, affirmed.

Houser, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 30, 1935, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 30, 1936. Thompson, J., voted for a hearing.