[S. F. No. 16860.   In Bank.   July 8, 1943.]

ROBERT HUMPHREYS, Appellant, v. SAN FRANCISCO
AREA COUNCIL, BOY SCOUTS OF AMERICA (a
Corporation) et al., Respondents.

A. E. Bagshaw and Harold F. Riede for Appellant.

Daniel J. O'Brien, Jr., John H. Corning, Freitas, Duffy & Keating, Carlos R. Freitas and Jerome A. Duffy for Respondents.

GIBSON, C. J.—This action was brought for damages arising out of the death of plaintiff's 15 year old son, Robert

Humphreys, Jr. The boy was attending an encampment of boy scouts conducted by the defendant San Francisco Area Council, Boy Scouts of America, a charitable corporation, at Camp Lilienthal, located about two miles from Fairfax in Marin County. At the time of the accident he was riding in a truck driven by another boy scout, Francis Kuckein, who was employed by defendant council and at the time was operating the truck in the scope of such employment. The court, trying the case without a jury, concluded that although the driver of the truck was negligent, Robert "was a guest . . . and not a passenger," and accordingly rendered judgment for the defendants. Since it is not claimed that the death of the boy resulted from the intoxication or wilful misconduct of the driver, the judgment must be affirmed if the court correctly concluded Robert accepted the ride as a guest without giving compensation therefor. (Veh. Code, §403.)

Boy scouts attending Camp Lilienthal who supplied and cooked their own food were furnished lodging and other camp facilities without charge. Those scouts who received their meals from the camp paid seven dollars weekly. It was the practice to select some of the more mature scouts to act as "staff members" who were classified as "seniors" and "juniors," also called "leaders." The members of the senior staff were young men between 19 and 22 years of age who acted as vocational directors, health and safety counselors or in similar capacities. They received a small wage in addition to board and lodging. The junior staff members were younger scouts, selected by the camp director from among boys who possessed particular qualifications and whom he was grooming for senior staff duties. The juniors acted as assistants to the seniors and performed various other duties about the camp. They received only board and lodging for their work. Robert was a junior staff member and he acted as bugler and operated the camp canteen where candy, ice-cream and soda water were sold.

Privileges not enjoyed by other boys were granted to staff members as a group. They were given a watermelon or ice-cream "feed" at staff meetings held on Sunday nights and were privileged to have affairs in the lodge to the exclusion of other boys. They were allowed to remain up later at night than others and were permitted, when going to and

from Fairfax, to ride on the camp "pick-up truck" which was used to carry baggage and supplies. Seven staff members were called as witnesses by the defendants and testified to facts concerning the accident. In response to questions asked on direct examination, three seniors testified they received as compensation board and room plus a small salary. Four juniors testified that the only compensation they received for services was room and board. One junior member questioned on cross-examination as to whether the practice of allowing staff members to ride in the truck was the result of a "blanket permission" given by the camp director or if it was necessary "to go to him in each instance and ask him for specific permission." stated, "I have always asked him personally." Concerning the purposes for which the truck was maintained, the camp director, Dickieson, testified as follows: "Q. What was that Plymouth truck used for in the year 1939? A. It was used principally for bringing baggage from the gas station where the boys would leave it when they came to camp, so that they wouldn't have to pack their baggage up; to drive to Fairfax and pick up mail and provisions the boys doing their own cooking would want bought, and that was all. Q. They picked up the baggage of the boys coming into camp and took the baggage for the boys leaving?. A. Yes." "Q. Was the main purpose of the pickup truck to give the staff members transportation, or was the main purpose something other than that? A. You mean the reason for us having that? Q. Yes. A. No. The reason for the pickup truck was to— pardon—to move—pick up the boys' baggage down town, to pick up the supplies—commissary supplies—in the city; weekends when I would go in. No; the truck was not used—I mean, we did not have the truck for the purpose of carrying the leaders at all." With reference to the practice or policy of permitting the staff members transportation on the truck, Mr. Dickieson testified, "there was no particular arrangement at all . . . if the staff members wanted to go down to town once in a while, why, we had no objection to them getting a lift down . . . there was nothing said about it. I mean, we didn't make any provision to that effect but they were at least, at any rate, permitted to go down. It was a common practice . . . that they did go back and forth in the truck. . . . Boys were permitted to ride on the pickup truck . . . on regular trips only . . . a special trip would not be

made to give any boy a ride except in case of an emergency.'' Dickieson testified further that at the time Robert was selected as a junior staff member there was no ''agreement, discus-, sion, or talk of any kind about his being entitled, as a part of his compensation, to ride up and down the hill on this truck.''

It is conceded that on the day of the accident Robert was on a purely personal mission. Plaintiff states in his opening brief ''that the purpose of [Robert's] trip was not connected with his employment and was for his own benefit.'' Plaintiff also concedes that the privilege of riding in the truck ''is not a matter of right in the sense that the privileges thus enjoyed are part of the contract of employment and are enforceable as such. . . .'' There is no evidence that at the time the staff members were selected anything was said about permission being given them to ride on the truck on its regular trips to and from Fairfax, nor is there any direct evidence that such privilege served to induce scouts to seek or retain staff membership or was considered a part of the compensation for services performed by them.

The court found ''that . . . ROBERT HUMPHREYS, JR., and FRANCIS KUCKEIN were members of the Boys Scouts of America and were, and each of them was employed by the SAN FRANCISCO AREA COUNCIL, INC., BOY SCOUTS OF AMERICA, a corporation, at the said 'CAMP LILIENTHAL.' in the capacity of Junior Staff Members; that the duties of the said ROBERT HUMPHREYS, JR., by virtue of the said employment consisted of operating the canteen and assisting in the supervision and training of members of Boy Scouts of America, and the duties of said FRANCIS KUCKEIN by virtue thereof consisted, in part, of operating the said Plymouth truck automobile between the said camp and the said city of Fairfax; . . . that the services performed by the said ROBERT HUMPHREYS, JR., were rendered in consideration of his receiving from said defendant, as a matter of contractual right, board and lodgings only at said Camp Lilienthal; that it is true that all junior staff members of said camp, including the said ROBERT HUMPHREYS, JR., and all of whom performed services for said defendant, were privileged to receive, and actually did receive transportation to and from Camp Lilienthal in the said Plymouth truck automobile which was maintained, in part, for said purpose, and that all other members of the said Camp Lilienthal not

performing services of some sort, and therefore not having the status of Junior Staff Members, did not have said privilege and actually did not receive said transportation; that said privilege was revocable at any time at the will of said defendants or either of them.''

It was further found: ''that at said time the said ROBERT HUMPHREYS, JR., was riding in said truck from Camp Lilienthal to the city of Fairfax on a mission personal to himself; that . . . the said ROBERT HUMPHREYS, JR., was riding in said truck by virtue of the privilege afforded him by the defendant SAN FRANCISCO AREA COUNCIL, INC., BOY SCOUTS OF AMERICA . . . that . . . while acting in the scope of his said employment . . . the said Francis Kuckein did then and there drive the said Plymouth truck automobile in a negligent and careless manner and by reason thereof the automobile did leave said highway, overturn and fall with great force and violence into a ravine adjacent thereto.''

The court concluded: ''that at said time ROBERT HUMPHREYS, JR., was a guest in said Plymouth truck automobile and not a passenger therein by virtue of his employment by the said SAN FRANCISCO AREA COUNCIL, INC., BOY SCOUTS OF AMERICA, a corporation, or otherwise . . . that plaintiff is not entitled to judgment against defendants or either of them.''

Plaintiff does not contend that the quoted findings are not supported by the evidence, but argues that the conclusion that the deceased was a ''guest'' and not a ''passenger'' is erroneous under the facts found. The question thus presented is whether as a matter of law the record compels a contrary conclusion.

Section 403 of the Vehicle Code provides that ''No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of such vehicle or against any other person legally liable for the conduct of such driver on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver.'' The designations ''passenger'' and ''guest'' have been adopted for the purpose of distinguishing a person who has given compensation within the meaning of the statute from one carried gratuitously. (*Cf.*

*McCann* v. *Hoffman,* 9 Cal.2d 279, 282 [70 P.2d 909] ; *Whitechat* v. *Guyette,* 19 Cal.2d 428, 430 [122 P.2d 47].)　█ Although benefits or considerations other than cash or its equivalent may be ''compensation,'' there is no compensation if the transportation is intended and received as a mere gratuity—a question for the trier of fact upon proper evidence. (See Restatement, Torts §490; *Darling* v. *Dreamland B. & U. Co.,* 44 Cal.App.2d 253, 256-258 [112 P.2d 338] ; *Carey* v. *City of Oakland,* 44 Cal.App.2d 503, 508-510 [112 P.2d 714] ; *cf. McCann* v. *Hoffman, supra; Whitechat* v. *Guyette, supra; Druzanich* v. *Criley,* 19 Cal.2d 439 [122 P.2d 53] ; *Jenkins* v. *National Paint & Varnish Co.,* 17 Cal.App.2d 161 [61 P.2d 780].)　█ A benefit would be received if the transportation was within the terms of the employment, or part of the agreed consideration for the work, or was directed by the employer during working hours, or was furnished to facilitate or speed a task the employee was to perform (see (1938) 26 Cal.L.Rev. 251, 254-255; (1938) 51 Harv.L.Rev. 545; *Knutson* v. *Lurie,* 217 Iowa 192 [251 N.W. 147] ; *Hall* v. *Smith,* 283 Mass. 166 [185 N.E. 850] ; *Kruy* v. *Smith,* 108 Conn. 628 [144 A. 304] ; *Russell* v. *Parlee,* 115 Conn. 687 [163 A. 404]; *Monison* v. *McCoy,* 266 Mich. 693 [256 N.W. 49] ; *White* v. *Gregory,* 161 Va. 414 [170 S.E. 739] ; *cf. McGrath* v. *Parson,* (Mass.), 45 N.E.2d 384) ; but none of these factors is found in the present case, for it is conceded that the trip ''was not connected with [Robert's] employment'' and constituted no part of his contractual compensation. Plaintiff cites *California Cas. Indem. Exch.* v. *Ind. Acc. Com.,* 21 Cal.2d 461 [132 P.2d 815], in which this court affirmed an award of compensation under the Workmen's Compensation Act for an injury suffered by an employee while riding home in the employer's automobile where the transportation was regularly furnished to employees. In that case, however, there was testimony that the employee, when hired, understood that transportation to and from work would be provided by the employer, and the court held that the facts were sufficient to support an inference there was an implied agreement to furnish such transportation.

Plaintiff argues that it is reasonable to infer that the continued practice or custom of permitting staff members (a privilege restricted to them alone) to ride in the truck to and from Fairfax was known to all potential staff members

and served as an inducement for them to accept employment and to keep them satisfied in their employment and that this, as part of a business relationship, constituted "giving compensation" within the meaning of section 403, *supra.* The trial court, however, refused to so infer, and the question is not whether it is reasonable to draw the inference but whether the court was compelled to do so as a matter of law because of the existence of the practice or custom here involved.

██ It is true, of course, that in some situations the existence of a practice or custom of furnishing transportation to employees might permit or even require the drawing of an inference that all rides were given not as a mere gratuity but with the purpose of inducing employees to accept or retain employment. Under the facts of the present case, however, we cannot hold as a matter of law that the privilege extended to junior staff members to ride on the truck was not a gratuity but was an inducement to the employment or was otherwise a part of a business relationship. In this connection we must keep in mind that, as stipulated at the trial, the defendant council is a charitable corporation "not conducted for any profit whatsoever" and that in none of its operations "is it in anywise akin to a business enterprise." This organization is engaged in the spiritual, physical and mental development of the youth of America. While attending this encampment Robert was not just an employee. He was a boy scout enjoying a vacation paid for in part by services performed and receiving at the same time training as a member of this organization. And no doubt junior staff members, like certain other scouts, were to some extent recipients of charitable benefits. The charitable functions of defendant council are considered, of course, only in connection with the nature of the relationship existing between it and the scouts attending Camp Lilienthal as one of the circumstances tending to show that the privileges accorded staff members might reasonably be regarded as gratuities rather than something bought and paid for. These privileges or preferences, as indicated by their nature, appear to have been small courtesies that went with rank. They included permission to have staff affairs in the lodge and the liberty to remain up later at night than other boys, as well as leave to ride on the truck. The privileges were not related to duties connected with employment, and although only staff members had jobs, the

character and nature of their work was varied while the privileges went to the staff as a group. These advantages might more properly be considered a part of scout training and a reward for faithful application of the principles they had been taught in their boy scout work rather than a part of a business relationship.

■ In support of the contention that the trial court was bound as a matter of law to infer from the practice of permitting staff members or leaders to ride on the truck that the custom served as an inducement to Robert to accept or retain employment with defendant council, appellant calls attention to the finding of the court, in referring to such practice, that the truck ''was maintained in part for said purpose.'' Although the uncontradicted evidence is to the contrary, the finding is supported by an admission in the pleadings. The fact, however, that the truck was maintained in part for the purpose of permitting staff members to ride thereon to and from camp did not require the court to conclude as a matter of law that compensation was given for the ride. The refusal of the court to draw the inference that the custom served as an inducement for Robert to accept or retain employment is a complete answer to appellant's argument. And regardless of whether or not the trier of fact reasonably could have inferred that the privilege was intended to or did foster a business relationship, we cannot hold that this must be true as a matter of law.

■ Under the evidence the court was justified in concluding that the preference accorded staff members in permitting them to ride on the truck to and from the camp was a gratuity and that Robert Humphreys, Jr., was a guest ''without giving compensation for such ride'' within the meaning of section 403 *supra*. This conclusion forecloses recovery by plaintiff and makes unnecessary any discussion of other issues presented.

The judgment is affirmed.

Shenk, J., Curtis, J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent. In my opinion the facts of this case as found by the trial court do not bring the deceased, Robert Humphreys, Jr., within the purview of the guest

statute (Veh. Code, sec. 403) and plaintiff is therefore entitled to recover damages for his wrongful death which was admittedly caused as the result of the negligence of an employee of the defendant corporation.

The trial court found that deceased was an employee of defendant corporation, and as such employee was privileged to receive transportation to and from Camp Lilienthal in the Plymouth truck which was maintained, in part, for said purpose; that on the 2nd day of July, 1939, while deceased was riding in said Plymouth truck pursuant to such privilege an accident happened as the result of the negligence of the driver of the truck who was an employee of the defendant corporation, which resulted in the death of said deceased. The conclusion of law which must necessarily be deduced from these facts is that the deceased was a passenger in said Plymouth truck and was therefore not subject to the provisions of the so-called guest statute.

The majority opinion appears to be based in part upon the theory that because the defendant council is a charitable corporation, not conducted for profit, a different rule should be applied to it in determining whether or not persons transported in its motor vehicles are guests or passengers. In my opinion, this is a false quantity and is injected into the majority opinion for the purpose of supporting an obviously untenable conclusion. While it is true that the defendant corporation is not operated for profit, it is nevertheless liable in damages to those wrongfully injured as the result of the negligence of its employees in the operation of its motor vehicles where such injured persons do not come within the purview of the guest statute.

The sole question is whether or not the deceased was a passenger and not a guest in defendant's automobile at the time of the injury which resulted in his death.

The appeal of this case was first heard and determined by the District Court of Appeal, First Appellate District, Division Two, and an opinion filed therein prepared by the Honorable Maurice T. Dooling, Justice pro tem., and concurred in by Presiding Justice Nourse and Associate Justice Spence of that division. By this opinion the judgment of the trial court was reversed as to respondent San Francisco Area Council Boy Scouts of America with directions to the trial court to try the issue of damages and enter judgment against

such defendant for damages suffered by plaintiff as the result of the death of his son. I am in full accord with the views expressed in the opinion prepared by Mr. Justice Dooling, pro tem., in this case and consider said opinion an excellent example of judicial craftsmanship. I am adopting the following portion of said opinion as a part of this dissent:

"This appeal presents primarily the question whether the facts found by the trial court support the conclusion of law above quoted. In approaching this question certain rules of law which have been worked out by the courts in construing the so-called guest statutes of this and other states should be borne in mind. Among these may be mentioned the following. 1. Being in derogation of the common law the guest laws must be construed strictly. (*Rocha* v. *Hulen*, 6 Cal.App.-2d 245, 254 [44 P.2d 478]; *Prager* v. *Isreal*, 15 Cal.2d 89, 93 [98 P.2d 729].) 2. In construing the law the courts should consider not only the language of the statute itself, but also the purpose of the enactment and the nature of the evil against which it was directed. (*McCann* v. *Hoffman*, 9 Cal.2d 279, 282 [70 P.2d 909]; *Rocha* v. *Hulen, supra; Crawford* v. *Foster*, 110 Cal.App. 81, 87 [293 P. 841].) 3. That in order to take a person riding in an automobile out of the guest status it is not necessary that the compensation for the ride be a strict contractual consideration or that an enforceable contract relation relative to the ride should exist between the parties. (*Haney* v. *Takakura*, 2 Cal.App.2d 1, 7 [37 P.2d 170, 38 P.2d 160]; *Scholz* v. *Leuer*, 7 Wash.2d 76 [109 P.2d 294, 299]; *Peronto* v. *Cootware*, 281 Mich. 664 [275 N.W. 724]; *Russell* v. *Parlee*, 115 Conn. 687 [163 A. 404, 406].) 4. That in construing such statutes consideration should not only be given to the meaning of the language 'without giving compensation for the ride' or its equivalent in other statutes, but also to the meaning of the word 'guest' as used in such statutes. (*Rocha* v. *Hulen, supra; Knutson* v. *Lurie*, 217 Iowa 192 [251 N.W. 147, 149]; *Smith* v. *Clute*, 277 N.Y. 407 [14 N.E.2d 455, 458].) 5. That where the excursion is not purely social any benefit to the driver or owner of the automobile conferred or anticipated, or mutual benefit present or anticipated to the driver or owner and the person carried, is sufficient to take the case out of the statute. (*Crawford* v. *Foster, supra; Walker* v. *Adamson*, 9 Cal.2d 287 [70 P.2d 914]; *Druzanich* v. *Criley*, 19 Cal.2d 439 [122 P.2d 53]; *Carey* v.

*City of Oakland,* 44 Cal.App.2d 503 [112 P.2d 714] ; *Duclos* v. *Tashjian,* 32 Cal.App.2d 444 [90 P.2d 140] ; *Boyson* v. *Porter,* 10 Cal.App.2d 431 [52 P.2d 582].)

"Thus, to enlarge somewhat upon the principles above stated, the court said in *Crawford* v. *Foster, supra,* at p. 87 :

" 'It has been held that the terms of a statute should be construed with their intent and purpose in view. (*Evans* v. *Selma Union High School Dist.,* 193 Cal. 54 [31 A.L.R. 1121, 222 P. 801].) The purpose and object that the legislature had in mind sometimes throws light upon the meaning of the language used. The situation that this section was apparently designed to prevent is well known. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation. Neither this feeling nor the reasons therefor apply to a situation arising out of an ordinary business transaction, such as the efforts of a dealer to sell an automobile to a customer.'

"In *Rocha* v. *Hulen, supra,* at p. 254, we find the following language:

" 'In all the cases having to do with guest statutes, it appears that the various courts have had distinctly in thought the question of whether the circumstances presented bring the case within the intent and purpose to be accomplished, and the evils to be remedied by the enactment of such statutes, as well as whether the plaintiff is within the language appearing in the statutes being considered.

" 'The common-law right of having redress for injuries wrongfully inflicted, being lessened by such statutes, necessitates strict construction, and also, that cases be not held within the provisions of such statutes unless it clearly appears that it should be so determined.'

"In construing the guest law our courts have determined that persons, in the following situations, among many others, were not within the meaning of the statute : A plumber being taken by the owner of land to look at a broken pump, although he had not contracted to repair it *(Duclos* v. *Tashjian, supra) ;*

a person engaged with the driver in a joint business venture *(Walker* v. *Adamson, supra);* a friend accompanying a patient in an ambulance at the request of the ambulance driver *(Carey* v. *City of Oakland, supra);* a person who shared in the driving where the driver otherwise would not have undertaken the trip *(Druzanich* v. *Criley, supra);* a supporter of a candidate for public office while riding in an automobile loaned for the purpose of furthering the campaign *(Boyson* v. *Porter, supra);* a child riding in a school bus *(Smith* v. *Fall River, etc., School Dist.,* 118 Cal.App. 673 [5 P.2d 930]) ; a boy riding with another to learn a paper route in the expectation that he might later take it over if a vacancy occurred *(Sumner* v. *Edmunds,* 130 Cal.App 770 [21 P.2d 159]).

"It may be said of these cases that they show a marked tendency on the part of our courts in construing our guest law to take a broad and realistic and not a narrow or technical legalistic view of the situation and relation of the parties in determining whether an injured occupant of an automobile was or was not a guest within the meaning of the statute at the time of receiving an injury.

"Turning to cases dealing directly with the transportation of an employee to or from his place of employment, where the carriage of the employee was not a matter of contract right, we have found the following: *Kruy* v. *Smith,* 108 Conn. 628 [144 A. 304] ; *Russell* v. *Parlee, supra; White* v. *Gregory,* 161 Va. 414 [170 S.E. 739] ; *Garrett* v. *Hammack,* 162 Va. 42 [173 S.E. 535] ; *Monison* v. *McCoy,* 266 Mich. 693 [256 N.W. 49] ; *Peronto* v. *Cootware, supra; Knutson* v. *Lurie, supra; Bummer* v. *Liberty Laundry Co.,* 48 Cal.App.2d 648 [120 P.2d 672].

"In *Kruy* v. *Smith, supra,* a laundress was being transported to her employer's home in the employer's automobile when injured, instead of traveling by street railway as she was accustomed to do. The court reversed a judgment on a directed verdict for defendant. In construing the Connecticut guest law the court said at p. 305:

" 'The Legislature, when it used the word 'guest,' did not intend to include persons who are being transported for the mutual benefit of both the passenger and the operator or owner of the car, and, in determining whether the transportation was for the mutual benefit of both, not merely the act

of transportation must be considered, but also any contract or relationship between the parties to which it was an incident.'

"In *Russell* v. *Parlee, supra,* the defendant owned a farm which was worked by one Grant. Grant employed the plaintiff to help him in the farm work and plaintiff was injured while being conveyed to the farm by defendant in defendant's automobile. The Supreme Court of Errors of Connecticut in affirming a judgment for plaintiff based on simple negligence said at p. 406:

" 'We are here concerned, not with a relationship growing out of contract, as in the case of a bailment, but with the construction of a statute denying to a certain class of passengers in an automobile a right to recover compensation for injuries resulting from negligence in its operation, to which, prior to its enactment, they were entitled. Its operation should not be extended beyond the correction of the evils and the attainment of the permissible social objects which, it may be assumed, were the inducing reasons for its enactment. *(Silver* v. *Silver,* 280 U.S. 117, 122 [50 S.Ct. 57, 74 L.Ed. 221].) It may well have appeared to the Legislature that there were sound social reasons for denying a recovery for negligence against one who was transporting in his automobile a member of his family or a social guest or casual invitee, in an action brought by the recipient of his hospitality, which would not exist where a mutual benefit growing out of the relationship of the parties was contemplated, even though the benefit to be received was incidental, and not a technical legal benefit which the parties by their contract had bargained for as the consideration for the transportation. . . . The person transported is not a guest within the meaning of the statute if the transportation is for the mutual benefit of both parties and in determining whether it was for their mutual benefit the relationship between the parties to which it was an incident may be considered. . . .

" 'The arrangement between the defendant and Grant created an identity of interest between them in the cultivation of the garden, and the transportation of the plaintiff contemplated a benefit to her by expediting the necessary work in her garden, though the actual wages of the plaintiff were to be paid by Grant instead of herself.'

"In *Monison* v. *McCoy*, the Supreme Court of Michigan held by a divided court that a woman being driven to her home by defendant after having spent a week in defendant's home nursing his wife was entitled to recover for injuries received through simple negligence under the guest statute of that state. The majority opinion quoted from and relied on the case of *Kruy* v. *Smith, supra.*

"In the later case of *Peronto* v. *Cootware, supra,* the Supreme Court of Michigan was called upon to apply its guest statute to the following facts, quotes from the opinion of the court:

" 'On December 15, 1935, Clarence's wife was sick. Clarence asked Leslie to go to Hardwood, get their mother, and bring her back to take care of his wife, authorizing Leslie to tell the mother that Clarence would pay her what it was worth. Leslie drove to Hardwood and told plaintiff what Clarence wanted and agreed to do. Plaintiff acquiesced in the request, and the next day, on the return trip, the car struck an icy spot in the road, ran over an embankment, and plaintiff was injured. She sued Leslie.

" 'The court held plaintiff not a guest passenger, submitted the case to the jury on the question of ordinary negligence, and plaintiff had verdict and judgment of $2000 damages.

" 'No arrangement was made nor suggested that Leslie be paid for making the trip or for transporting the plaintiff. His act was wholly gratuitous and as a favor to Clarence. The sole question upon liability is whether plaintiff was a guest passenger.

" 'Plaintiff made the trip, not for her own pleasure or on her own business, but in order to render a requested service for Clarence. Her presence in the car had no social aspect; nor did Leslie extend the invitation to ride as a matter of hospitality. The transportation was a business proposition. If Clarence had been in the place of Leslie, the case would be clear that plaintiff was not a guest (citing *Monison* v. *McCoy, supra* . . .). The fact that Leslie was an uncompensated volunteer can make no difference in his relations to plaintiff.'

"In *White* v. *Gregory*, 161 Va. 414 [170 S.E. 739], the plaintiff was an employee of defendant Gregory. Gregory was an undertaker and plaintiff was at Gregory's funeral home to help care for the body of a woman. There being some delay

Gregory said to plaintiff: 'How about you going and getting something to eat?' He then instructed another employee, the defendant Miller, to 'drive Mrs. White home.' The accident occurred on the way to plaintiff's home. The Supreme Court of Appeals of Virginia said:

" 'The court is of opinion that these facts are sufficient to support a finding that the plaintiff was not a mere guest of either Miller or Gregory.'

"In *Garrett* v. *Hammack, supra,* the plaintiff was employed by defendant both in his home and his store. While defendant was driving her from home to store plaintiff was injured. The court said:

" 'The jury was warranted in finding that plaintiff was a passenger in the automobile of Garrett, and this court is unanimously of the opinion that her right, if any, to recover against Garrett should be based on proof of ordinary negligence.'

"In *Knutson* v. *Lurie, supra,* plaintiff was a domestic servant in the home of defendant. She was injured through defendant's negligence while defendant was taking her to get a pair of shoes which plaintiff had left at a shop to be repaired. The Supreme Court of Iowa affirmed a judgment for plaintiff. While the court laid some emphasis on the fact that plaintiff took care of defendant's baby during the ride the court cited and quoted from *Fruy* v. *Smith, supra,* and *Russell* v. *Parlee, supra,* and commented:

" 'After reading the foregoing cases, it becomes apparent that one may be an occupant of an automobile without being a guest or an invitee, and yet not be a passenger for hire. . . . Furthermore, it is manifest that in determining the benefit, it is proper to take into consideration 'not merely the act of transportation . . . but also any contract or relationship between the parties to which it was an incident.'

"We have discussed and quoted from these cases at length because in a variety of circumstances, and for somewhat divergent reasons, as is natural in the construction of a new type of legislation, these decisions have all shown a trend of judicial thought in one direction, that a servant or employee being carried to or from his place of employment in his employer's automobile is not a guest within the meaning of the guest statutes even though the carriage is a matter of privilege or accommodation and not of strict contractual right.

"Directly opposed to this trend of judicial thought is *Bummer* v. *Liberty Laundry Co.*, 48 Cal.App.2d 648 [120 P.2d 672]. In that case an employee of the defendant after a change of the opening time of the laundry from 7 a. m. to 6 a. m. was informed by defendant's foreman that he would thereafter pick her up and bring her to work. This he did thereafter with one or two exceptions when he had another employee, Taylor, pick her up. On the date of injury Taylor, at the foreman's request, picked up plaintiff in a truck of the defendant and by his ordinary negligence she was injured on the way to the laundry. The trial court gave plaintiff judgment which was reversed by the District Court of Appeal. The court said:

" 'Plaintiff testified that she had made no arrangement with the defendant to be furnished transportation to her work and there was no other evidence of compensation. Therefore, from the evidence which was received, defendant was merely extending a courtesy to plaintiff in providing transportation, for which she was not furnishing compensation.'

"The District Court of Appeal cited no authority for this conclusion, and did not consider or discuss any of the cases involving the master-servant relationship from other jurisdictions which we have enlarged upon above. No petition for hearing by our Supreme Court was filed in that case. Much as we hesitate to disagree with the conclusion of another court of equal jurisdiction, in the circumstances here present we feel that we should examine the proposition presented by this appeal in the light of the cited cases from other jurisdictions and the purpose and spirit of our guest law without feeling bound by the Bummer case as a controlling precedent.

"In assaying the factors pro and con in the case before us it is to be observed that the court found that one of the purposes for which the Plymouth truck was operated was to transport Junior Staff Members between the camp and Fairfax, that Junior Staff Members were privileged to receive and actually did receive such transportation to the exclusion of members of the camp not performing some sort of services, and that Humphreys, Jr., was riding in the truck by virtue of such privilege at the time that he received his fatal injuries. On the other side are the factors that Humphreys, Jr., was riding on a mission personal to himself, and that

the privilege of riding was a revocable one and not a matter of contractual right.

"In weighing these factors one conclusion seems to us too clear for argument, that the ordinary boy accepting employment as a Junior Staff Member in the camp, in weighing the advantages, would take into consideration the fact that as an incident to his employment he would be furnished transportation in the camp truck to and from the town two miles distant and would not be apt to consider nor be at all concerned with the question whether such transportation was afforded him in a mere revocable privilege or as a matter of strict contractual right. The transportation, if not a consideration for, was at least an inducement to the employment. It must also be remembered as pointed out in *Crawford* v. *Foster, supra,* at p. 86:

" 'While there are exceptions, notably in the case of persons staying at a hotel, in its ordinary use the word 'guest' connotes something other than a business transaction.'

"Here as a part of the business of operating the camp the truck was maintained, according to the findings, partly for the very purpose of transporting Junior Staff Members to and from the town. The analogy of the hotel bus seems not inapt. The operation of such busses between hotel and station, as an accommodation to patrons but not as a matter of contract right, is not uncommon. Assume a patron who has paid his bill and checked out of the hotel injured by the negligence of the bus driver on the way to the station. Would any court countenance the defense that he had accepted a ride as a guest without giving compensation for such ride?

"Without going further than the facts of this case we are satisfied that where, as here, an employer not as an isolated or spontaneous single act of courtesy, but as a regular practice, affords transportation to its employees to and from the nearest town, and maintains an automobile in part for that very purpose, an employee riding to such town on an errand of his own by virtue of the privilege so afforded him is not within the spirit or the letter of our guest law, although the transportation is not a matter of contract right but a mere revocable privilege. The established and continuous character of the transportation so furnished to the employees indicates that it was regarded by the employer not as a mere social courtesy but as a business arrangement incident to the

employment and of mutual benefit both to employer and employee.

"Respondent San Francisco Bay Area Council, Inc., Boy Scouts of America, urges in support of the judgment that it is a charitable non-profit corporation and should as such be exempt from liability for the torts of its employees. A careful reading of *Silva* v. *Providence Hospital,* 14 Cal.2d 762 [97 P.2d 798] and *England* v. *Good Samaritan Hospital,* 14 Cal.2d 791 [97 P.2d 813] satisfies us that, while the precise question before the court in those cases was the liability of a charitable hospital to a paying patient, the effect of those decisions is to impose on charitable organizations in general the same liability for the negligence of employees as exists in the case of other employers."

In my opinion the judgment should be reversed.

Appellant's petition for a rehearing was denied August 5, 1943. Carter, J., voted for a rehearing.