[Civ. No. 10682.   Third Dist.   April 22, 1964]

THELMA LUNDELL, Plaintiff and Appellant, v. LEO FRANK HACKBARTH et al., Defendants and Respondents.

Robert J. Rishwain, Nels B. Fransen and Simonelli & Fransen for Plaintiff and Appellant.

Clarence D. Knutsen, Honey, Mayall, Hurley & Knutsen and Albert E. Cronin, Jr., for Defendants and Respondents.

PIERCE, P. J.—Plaintiff was a rider in an automobile owned and driven by defendant Acker. Mr. Acker was

involved in a collision when his car struck the rear end of a vehicle being driven by defendant Hackbarth. When the accident happened, the latter was either making, or preparing to make, a left turn at an intersection. Plaintiff was injured and sued both Mr. Acker and Mr. Hackbarth to recover damages. The jury returned a general verdict for both defendants.

The evidence clearly showed Mr. Acker's negligence but he was concededly not guilty of wilful misconduct and was not intoxicated. On appeal plaintiff contends she was not a guest. We hold substantial evidence supports the jury's implied finding that she was. Although in the domestic employment of Mr. Acker on the day of the accident, the jury reasonably determined it happened during an interlude when plaintiff and the employer were on a wholly social excursion. Plaintiff, also appealing from the judgment for defendant Hackbarth, contends that the trial court erred in failing to instruct the jury in terms of Vehicle Code section 22504, forbidding the stopping of a vehicle upon the roadway of a highway when it is practicable to stop off such portion of the highway. This contention cannot be sustained either. That section, under the facts, is inapplicable.

### Re: *The Contention that Plaintiff was a Passenger.*

Plaintiff and her husband lived near the Acker home. Acker employed plaintiff on a part-time basis to do housework, including some cooking. Usually she worked from 8 a.m. to 4:30 p.m., although the hours were variable, and she would quit when the day's chores were completed. The two were good friends. Mr Acker had loaned plaintiff money, had given her husband old clothes, and had performed other favors for plaintiff.

On March 28, 1961, plaintiff worked at the Acker home in the morning. Mr. Acker arrived at the house around 11 a.m. Plaintiff told him she had run out of olive oil needed for cooking, and Mr. Acker said he would drive her over to the orchard of his friend, "Uncle Charlie" Derivi, and obtain some olive oil, also some olives. He had noticed that plaintiff's hip, injured a few months earlier, was bothering her. He asked her if she would care to go with him for the ride and to rest. She consented. She planned to complete her chores (ironing and cooking dinner) upon their return. According to Mr. Acker, plaintiff had already been at work for five hours when work was interrupted for this trip.

The two drove to Derivi's. They made two stops on the

way, one at plaintiff's home for plaintiff to notify her husband and to obtain money for shopping. The other stop was at a grocery store where they each drank a beer and where Acker bought salami, cheese and cigars to take to Mr. Derivi. At Derivi's place they had lunch and purchased olive oil and olives. Plaintiff told Mr. Derivi the kind of olives they wanted. The latter removed them from the crock on the service porch where they were kept and placed them in a container. Some of the olives were purchased by plaintiff, some by Mr. Acker. The two had been visitors at Derivi's before on two occasions. Those occasions had been on days when plaintiff had not been working.

Destination on departure was the Acker place, where plaintiff was to complete the day's work. The accident occurred en route.

These facts support the implied finding that under Vehicle Code section 17158[1] plaintiff was a guest in Mr. Acker's car at the time of the accident.

■ Plaintiff had the burden of proving she was not a guest. (*Martinez* v. *Southern Pac. Co.*, 45 Cal.2d 244, 250 [288 P.2d 868].)

The last cited case states on page 250: " 'Whether a person riding with another was a passenger or a guest is to be determined on the basis of the answer to the factual question: Did the rider confer a benefit on the driver for the ride? (*Malloy* v. *Fong*, 37 Cal.2d 356, 376-378 [232 P.2d 241].) It is for the trier of fact to determine whether the rider conferred a benefit or whether the ride was merely of a social nature. (... *Gosselin* v. *Hawkins*, 95 Cal.App.2d 857, 861 [214 P.2d 110].) ...'

"... Where the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, compensation may be said to have been given, with the result that the rider is a passenger and the driver is liable for ordinary negligence. (*Thompson* v. *Lacey*, supra, 42 Cal.2d 443, 447 [267 P.2d 1]; *Whitmore* v. *French*, supra, 37 Cal.2d 744, 746 [235 P.2d 3].) But the benefit to the driver must be something more than simply the pleasure

---

[1]Vehicle Code section 17158 provides in pertinent part: "No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, . . . has any right of action for civil damages against the driver of the vehicle . . . on account of personal injury to . . . the guest during the ride, unless the plaintiff in such action establishes that the injury . . . proximately resulted from the intoxication or wilful misconduct of the driver "

of the rider's company (*Whitechat* v. *Guyette,* 19 Cal.2d 428, 433 [122 P.2d 47])...."

█ Plaintiff did not pay Mr. Acker for the ride. It is doubtful whether it may accurately even be said that Mr. Acker received plaintiff's assistance in the selection of the olives. As to this, the evidence is not altogether clear. There is evidence that both indicated the choice from samples. Plaintiff selected some olives for herself. But even assuming plaintiff's aid in this respect, this unplanned act was so trivial the jury was justified in finding it did not amount to her giving compensation for the ride. █ The only other benefit received by Mr. Acker was the pleasure of plaintiff's company. This, as we have shown, is not deemed "compensation."

█ The fact that an employer-employee relationship exists is an important consideration in the determination of whether or not a benefit is being conferred. "... A benefit would be received if the transportation was within the terms of the employment, or part of the agreed consideration for the work, or was directed by the employer during working hours, or was furnished to facilitate or speed a task the employee was to perform...." (*Humphreys* v. *San Francisco Area Council, Boy Scouts,* 22 Cal.2d 436, 442 [139 P.2d 941].) But the mere existence of the employer-employee status alone is insufficient in and of itself to make the guest statute inoperative. (*Humphreys* v. *San Francisco Area Council, Boy Scouts, supra*; *Bummer* v. *Liberty Laundry Co.,* 48 Cal.App.2d 648 [120 P.2d 672]; and see Note 49 A.L.R.2d 341.)

█ Under the facts here plaintiff was not required to travel with her employer on a shopping expedition. Although she testified she had been directed by Mr. Acker to make this trip, he testified he merely asked her if she would care to go for her own rest and pleasure. It did not speed performance of any assigned task. While Mr. Acker did testify that he told plaintiff "she did not have to worry about being paid for a full day," it had also been their understanding that they would return after the excursion so plaintiff could complete her ironing and cook the evening meal. Asked why he had actually compensated her for a full day, Mr. Acker replied: "Well, it was no more than right, because she would have come back and finished up, so I felt, in the condition of the whole family, that I would pay her a full day's wages." These facts did not necessitate a finding that Acker compensated plaintiff for the trip. The facts as a whole seem to

614

depict a social excursion, just as the other visits by the two to Mr. Derivi's place had been. Although this visit was an interlude in a workday, where the others had not been, this was an undistinguishable difference.

Re: *The Contention that the Court Erred in its Refusal to Instruct on Hackbarth's Duty to Stop.*

The trial judge refused to give an instruction based upon Vehicle Code section 22504. That section provides, in part, that "Upon any highway in unincorporated areas no person shall stop, park, or leave standing any vehicle ... upon the roadway when it is practicable to stop, park, or leave the vehicle off such portion of the highway, ..."[2]

We examine the facts to determine the merits of this contention. At the time and date of the accident, Mr. and Mrs. Hackbarth were driving west on Highway 8. Their

[2]The full instruction offered was:

"Section 22504 of the Vehicle Code prohibits stopping or parking a vehicle on the roadway of a highway in an unincorporated area whenever it is practicable to stop, or park the vehicle elsewhere. The roadway is that part of a highway which is improved, designed or ordinarily used for vehicular traffic.

"In determining whether it was practicable for a driver to stop or park his vehicle somewhere other than in the roadway, you should consider not only the physical conditions bordering the roadway and what other places are available for stopping or parking but also the driver's reason for stopping.

"Except when a vehicle is so disabled that the driver cannot avoid stopping, anyone who stops or parks on the roadway must leave space on the highway opposite wide enough for other vehicles to pass freely by. Also a clear view of the vehicle must be available for a distance of 200 feet in each direction the highway.

"Evidence that a driver stopped, or parked a vehicle on the roadway of a highway in an unincorporated area is prima facie evidence of a violation of law. It will support a finding that the driver's conduct in this respect was unlawful unless he presents evidence of equally convincing force to show that it was not practicable for him to stop, park or leave the vehicle elsewhere, that there was sufficient free passageway for other vehicles on the highway opposite and that the stopped vehicle was clearly visible from a distance of 200 feet in either direction on the highway.

"If a party to this action violated Section 22504 of the Vehicle Code, the terms of which have just been explained to you, a presumption arises that he was negligent. This presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances his conduct in stopping or parking a vehicle on the roadway was excusable or justifiable.

"To prove that such a violation of law was excusable or justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the driver did what might reasonably be expected of a person of ordinary prudence who desired to comply with the law acting under similar circumstances."

destination was the Beecher Nursery located on Beecher Lane, and they were looking for the intersection at which they would turn left to reach the nursery. When they had reached a point 300 feet from this intersection, they identified it by a sign directing them to the nursery. At this time Mr. Hackbarth, in his rearview mirror, saw Mr. Acker's car overtaking him from the rear. He estimated the distance then separating the two cars at 300 yards. Mr. Hackbarth testified that 175 to 200 feet back from the intersection he commenced giving a left-turn arm signal which was continuous thereafter. When the Hackbarths were "just approaching" the intersection, Mr. Hackbarth again noted the Acker vehicle and then estimated it to be 100 yards back. There was no other traffic on either highway and Mr. Hackbarth prepared to make his left turn "figuring" that Mr. Acker had sufficient room to go around him on the right. As his left wheel had just reached the white center line of the highway he was struck forcibly from the rear by the Acker automobile. Immediately before the impact Mr. Hackbarth applied his brakes.

Mr. Acker testified that traveling at 45 miles per hour he did not become aware of the Hackbarth automobile until it was 200 feet in front of him; this notwithstanding a clear day, unobstructed vision, and the absence of any other traffic on the highway. Eight car lengths behind the other vehicle he commenced to apply his brakes. He testified he did not observe Mr. Hackbarth's arm signal; his testimony in this regard was: "Q. As a matter of fact, you don't know whether he gave one or not? A. No, I did not see it. That is the only thing I can say."[3]

Mr. Acker admitted to plaintiff that the accident was his fault. He testified that "my equipment was not adequate."

Mr. Hackbarth testified his car was still in motion at the time of the impact, although it was almost at a stop. He had his foot on his brake pedal just before the accident. At his deposition he testified he believed his wheels had laid down skid marks.

Early in his testimony Mr. Acker had said: "Q. The car of

[3]Mr. Acker told an investigating highway patrol officer he did not see the arm signal but the officer testified Mr. Acker had told others at the scene that Mr. *Hackbarth had* given a signal. Although hearsay, this was received without objection, and can be considered to support the judgment. (*Crocker-Anglo Nat. Bank.* v. *American Trust Co.*, 170 Cal.App.2d 289, 299 [338 P.2d 617]; *Estate of Fraysher*, 47 Cal.2d 131, 135 [301 P.2d 848].)

Mr. Hackbarth—was it stopped? A. It sure must have been, from the speed I was going and the impact it made.''

Later this testimony was qualified: ''Q. Mr. Acker, do you know for a positive fact that car was at a dead stop? A. Nobody would know that. I don't think he knew it. I didn't know. Q. That is what I am getting at—you don't know whether he was stopped, or moving? A. No, I don't know.''

■ ''[A] party has a *right* to instructions on his theory of the case, if it is reasonable and finds support in the pleadings and evidence or any inference which may be properly drawn from the evidence.'' (2 Witkin, Cal. Procedure, Trial, § 52, p. 1780, and cases there cited.) ■ However, under the facts related above Vehicle Code section 22504 (and therefore the instruction based thereon) could have had no application. There was no evidence that Mr. Hackbarth had deliberately stopped his automobile on the roadway portion of the highway or that he was starting to do so. Actually, driving on a highway with a permissible 65-miles-per-hour speed limit he was preparing to make a left turn into an intersecting road, a maneuver which normally requires a motorist to slow down. While doing so he observed Mr. Acker's approach and ''figured'' the latter would pass him on the right. (Plaintiff offered no evidence that he could not have done so.) ■ Application of brakes by Mr. Hackbarth no doubt occurred at the moment he realized the Acker car was going to hit him in the rear. Even if at the point of impact the Hackbarth vehicle had come to a complete stop due to the application of brakes, no blame could attach to the act. Vehicle Code section 22504 has no relevancy to a sudden involuntary stopping prompted by a threatened imminent impact from the rear.

■ The offered instruction was properly refused. In this connection, however, it may be noted that the court instructed the jury fully (in the language of Veh. Code, §§ 22107, 22108) on the duties of a driver preparing to make and making a left turn. It also gave the following instruction: ''§ 22109. . . . No person shall stop or suddenly decrease the speed of a vehicle on a highway without first giving an appropriate signal in the manner provided in this chapter to the driver of any vehicle immediately to the rear when there is opportunity to give the signal.''

Also given was the instruction that violation of the statutes read created a presumption of negligence. The sections read properly informed the jury of the law applicable to the facts of this case. The giving of the rejected instruc-

tion would have been, as the court declared in rejecting it, "[c]onfusing when considered in connection with facts involved here." It would also have been error to give it.

Appellant has also appealed from the order denying her motion for a new trial. This is a nonappealable order and the purported appeal therefrom is dismissed.

Judgment is affirmed.

Schottky, J., and Friedman, J., concurred.